**Allen L. LAMAR et al.**

v.

**C. V. (Buster) KERN, Sheriff, Harris County, Deputy Sheriffs, etc.**

**Civ. A. No. 72-H-539.**

United States District Court,
S. D. Texas,
Houston Division.

Sept. 25, 1972.

Fred H. Dailey, Jr., Houston, Tex., for petitioners.

Joe S. Moss, Asst. Dist. Atty., Houston, Tex., for respondents.

## FINAL ORDER

SINGLETON, District Judge.

Plaintiffs have brought this class action under Fed.R.Civ.P. 23 on behalf of all prisoners similarly situated under the custodianship of the Harris County

Sheriff. This cause is filed under the jurisdiction of 42 U.S.C. §§ 1981 and 1983 and 28 U.S.C. §§ 1343, 2201, and 2202. Plaintiffs are challenging certain customs and policies that have been developed and followed by the Harris County Sheriff's department as violative of their civil rights. The Texas Legislature has provided for the establishment of county jails in Vernon's Tex.Rev.Civ. Stat.Ann. art. 5115 (1957). Said article does provide for segregation of prisoners by sex and age but not by race. Accordingly, this statute is in no way in question here or under attack. This § 1983 action is based upon the custom or usage of policies regarding racial segregation and censorship of the mails at the defendant institutions.

■ Plaintiffs are Negro inmates incarcerated at the Harris County Rehabilitation Center; one plaintiff, Allen B. Lamar, is no longer incarcerated there, but the class is properly represented by the remaining plaintiffs who appeared in court at the comprehensive hearing in this cause. Washington v. Lee, 263 F. Supp. 327 (N.D.Ala.1966), aff'd 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). The first allegation raises the issue of racial segregation in the county jail system. After hearing evidence on the method whereby prisoners are placed in cells at the Rehabilitation Center, this court finds that the system whereby one wing (3-D) of the unit consistently is filled with black inmates only is not a color-blind system and, therefore, violates the Equal Protection Clause of the Fourteenth Amendment. This court agrees with the Washington v. Lee, *supra*, 263 F.Supp. at 331, court when it wrote:

"We recognize that there is merit in the contention that in some isolated instances prison security and discipline necessitates segregation of the races for a limited period. However, recognition of such instances does nothing to bolster the statutes or the general practice that requires or permits prison or jail officials to separate the races arbitrarily. Such statutes and practices must be declared unconstitutional in light of the clear principles controlling."

■ The practice of segregating the prisoners by race must be immediately halted and only practices that implement in desegregation of the races will be permitted. *See* McClelland v. Sigler, 327 F.Supp. 829 (D.Neb.1971).

Plaintiffs have also alleged that the defendants are practicing a policy of mail censorship with regard to all mail to and from the county jails. In an attempt to establish what the jail rules were at the prison, a set of correspondence rules for the Rehabilitation Center effective July 7, 1972, was introduced at the hearing. (*See* Appendix I). However, the jail officials testified on the stand that these rules were no longer being followed at the jail. Instead, a set of oral regulations was being given to the prison employees. Exactly what the prison employees were being instructed to do was never clearly established. What was established, as a matter of fact, is that the defendants are censoring, or withholding, mail to and from courts and attorneys, as well as other personal and general correspondence.

■ This court finds that the defendants have infringed upon the plaintiffs' First Amendment free speech rights and right to petition the government for redress of grievances and their Sixth Amendment effective assistance of counsel rights for the reasons and policies abundantly explained by this court in the case of Guajardo v. Beto, 349 F.Supp. 211, filed this day. In accord with the reasoning set forth there, this court hereby enjoins the defendants and their agents from further censorship or withholding of the mails to Special Correspondents that is to: any court of the United States or of the State of Texas; any member of the Congress of the United States or any member of the Legislatures of the States of the United States; the President of the United States or the Governors of the States of the United States; the Attorney General of the United States or the Attorney Generals of the States of the United

States; the Director or any agent of the Federal Bureau of Investigation or the Director of any Bureau of the Department of Public Safety, State of Texas or other State Police Agencies; any licensed attorney in any state; any federal or state governmental agency; and any television station, radio station, or newspaper.

■ If there is a question as to whether or not an addressee is an attorney, the letter may be held no longer than twenty-four (24) hours to determine this. It it is determined the addressee is not a member of the Special Correspondents the letter will be withheld from the inmate, but the inmate will be told of its rejection. The prisoner may appeal this determination in the same manner that will be discussed later with regard to other rejected mail. The defendants are further enjoined from limiting the length or number of sealed mailings prisoners make to Special Correspondents. It must be firmly stated, however, that *all* mailings, special or general, are at the sole expense of the inmate for both postage and stationery.

■ As to incoming mail from Special Correspondents, the prison officials may open the mail in the presence of the inmate, check the envelope for physical contraband, disposing of the envelope if they wish, and check the signature of the correspondent to assure that it is indeed a Special Correspondent. But the letter's content itself may not be read. If the letter is not passed on to the prisoner's hands, the decision of rejection may be appealed by the prisoner in the same manner as other appeals discussed later.

■ With regard to outgoing general mail, that is, nonspecial mail, the inmate may write uncensored mail to anyone at his own expense without restriction as to length or volume.

The court is not unmindful that abuses may be made of this privilege. Therefore, if any report is made by a recipient of abusive prison mail to the county jail officials, a hearing should be held to investigate the incident and administer any appropriate discipline. However, at no time may such disciplinary action suspend the prisoners' right to write uncensored mail to Special Correspondents.

■ However, with regard to incoming mail, the inmate may receive only letters from those five (5) persons listed on his approved correspondence and visiting list. These incoming letters may be opened by the prison authorities, but only in the presence of the inmate, inspected for physical contraband and censored. The following are reasons why a letter may be rejected: (a) it may contain threats, imply blackmail and/or extortion, forbidden goods, or information or plots to escape; (b) it may discuss criminal activities; (c) it may contain codes to circumvent understanding of contents; (d) it may contain plots to use overt action to overthrow lawful authority; (e) it may contain solicitation of personal property or funds. County jail officers testified that the mail is presently opened in front of prisoners and the envelopes taken away then; therefore, this system would not impose an unbearable burden on the county jail personnel. If the mail is rejected, the prisoner may use the following procedure, which the county jail officials are directed to establish, in order to appeal such rejections (this is for all rejected mail):

1. After being notified in writing of the reason his mail was rejected, the inmate will be shown the mail in the presence of a jail official.

2. Within two weeks of notification there will be a hearing by jail officials with the inmate to discuss the rejection. A decision will be rendered within twenty-four hours of the hearing.

3. If the jail officials reviewing the rejected mail affirm the rejection, the inmate may appeal to the Harris County Sheriff.

The defendants are hereby enjoined from any practices that violate the intent and spirit of this order.

This is a final judgment.

APPENDIX I

Harris County Rehabilitation Center
2310 Atascoctia Road
Humble, Texas 77338

Rules and Regulations of Inmate's
Correspondence

Effective July 7, 1972

1. No more than five (5) persons may be listed on an inmate's correspondence and visiting list during any one period. Selection of the persons on the list will be restricted to members of the family unless the inmate has good reason to select others. All persons placed on the list are subject to approval. Inmates shall not try to correspond with anyone not on his approved list. All incoming letters and mail from anyone not on the approved correspondence list will be rejected.

2. Inmates may mail two (2) personal letters on each of the first two (2) mail nights and one (1) personal letter on the last mail night of the week. This will be a total of five (5) letters per week. However in order to take advantage of the five letter per week quota, the inmate must abide by the three night rule as stated at the beginning of this paragraph. Letters will be limited to two (2) sheets of paper but both sides may be used. Envelopes will be addressed correctly and the address of the person the inmate is writing must the same address as appearing on the inmate's correspondence list in the mail office. In the upper left hand corner of the envelope the inmate must put his name (the same name as booked in the center), address, and tank number.

3. Incoming mail must have senders name and address on the envelope.

4. Three (3) business letters may be written each mail night. There will be no set limit on the number of legal writs, legal papers, and court, attorney, and minister correspondence an inmate may mail on any night.

5. Inmates shall limit their letters to matters of person interest to their relatives and friends. Other inmates and institutional personnel will not be discussed.

6. Inmates must not smuggle letters in or out of this center.

7. Inmates may change their correspondence and visiting list every three (3) months. They must be at this center a full ninety (90) days before making their first change and a full ninety (90) days expiring thereafter.

8. No pictures of any type, post cards, greeting cards, or packages will be received through the mail.

9. If any outgoing letter is rejected, the inmate will be notified and told the reason for the reject. The following list are some of the reasons why letters may be rejected:

   A. Contain matter or be so worded that it violates the U. S. Postal laws.

   B. Contain obscenity, lewdness, threats, blackmail, forbidden goods, and information or plots of escape.

   C. Written to an unapproved name and address.

   D. Contain false information about other inmates. Discussing criminal activities, or contain names and addresses of center's personnel.

   E. Violate rules set out under the correspondence rules 1 through 8.

   F. Have taped-on stamps on the envelope.

   G. An erased envelope.

10. When you leave this center the mail not forwarded to you will be returned to the sender.

The mail officer will not answer questions on any activities in this center unless it has to do with correspondence.