491 F.2d 417
 John SANDS, Petitioner-Appellee,
v.
Louie L. WAINWRIGHT, Director, Division of Corrections,
State of Florida, Respondent-Appellant.
James E. BAKER er al., Petitioners-Appellants,
v.
W. J. ESTELLE, Director, Texas Department of Corrections,
Respondent-Appellee.
Guadalupe GUAJARDO, Jr., Plaintiff-Appellee,
v.
W. J. ESTELLE, Director, Texas Department of Corrections,
Defendant-Appellant.
Guadalupe GUAJARDO, Jr., Petitioner-Appellant,
v.
C. L. McADAMS, Warden, Wynne Unit, Texas Department of
Corrections,Respondent-Appellee.
 Nos. 73-1192, 72-2471, 72-3351 and 73-1497.
 United States Court of Appeals, Fifth Circuit.
 Dec. 26, 1973, Certiorari Denied May 13, 1974, See 94 S.Ct.
2403.
 
 Robert L. Shevin, Atty. Gen., Daniel S. Dearing, Chief Trial Counsel, Dept. of Legal Affairs, Civil Div., Tallahassee, Fla., for Louie L. Wainwright.
 James M. Russ, Michael F. Cycmanick, Orlando, Fla., Jack Greenberg, Stanley A. Bass, New York City, for John Sands.
 James De Anda, Philip Kent Maxwell, Corpus Christi, Tex., Frances T. Cruz, Houston, Tex., Mario Obledo, Alice Daniel, William Bennett Turner, San Francisco, Cal., for James E. Baker, Coy Ray Campbell, Sam Bernard, Jr., and Fred Arispe Cruz.
 Crawford Martin, Atty. Gen., W. Barton Boling, Asst. Atty. Gen., Austin, Tex., for W. J. Estelle in No. 72-2471.
 John W. Clarke, Jr., Dallas, Tex., for American Bar Ass'n, amicus curiae.
 John L. Hill, Atty. Gen., Gilbert J. Pena, Asst. Atty. Gen., Austin, Tex., for W. J. Estelle in No. 72-3351.
 Richard J. Trabulsi, Jr. (Court-appointed), Harry Reasoner, Houston, Tex. (Court-appointed co-counsel), for Guadalupe Guajardo, Jr., in Nos. 72-3351 and 73-1497.
 Jack Greenberg, Stanley A. Bass, New York City, amicus curiae.
 John L. Hill, Atty. Gen., Gilbert J. Pena, Asst. Atty. Gen., Austin, Tex., E. Ray Taylor, Jr., Asst. U.S. Atty., Atlanta, Ga., for C. L. McAdams.
 Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM,* RONEY and GEE, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 I.
 
 1
 These appeals, all involving the rights of inmates in state prisons, are consolidated for opinion purposes. They were argued consecutively before the Court sitting en banc. In Sands v. Wainwright, No. 73-1192, and in Baker v. Estelle, No. 72-2471, we were called upon to determine whether the procedural safeguards afforded by the Florida Division of Corrections and by the Texas Department of Corrections in in-prison disciplinary proceedings meet the due process requirements of the United States Constitution. Sands v. Wainwright and Guajardo v. McAdams, No. 73-1497, raise the issue of what procedural safeguards are constitutionally required before subjecting an inmate to administrative segregation. Baker v. Estelle and Guajardo v. Estelle, No. 72-3351, involve censorship of correspondence between inmates and attorneys. And in Guajardo v. Estelle we were asked to determine the constitutionally permissible scope of prison officials' authority to read and censor all inmate mail. All four of these cases raise issues of broad application and of great constitutional significance-- issues that have drawn nationwide attention from courts, commissions, and commentators.[1]
 
 
 2
 Appropriately in light of these momentous issues, litigants and lawyers by the score, from as far away as New York and San Francisco, boarded the federal train to begin their journey toward justice. For some of the lawyers and all of the litigants this journey began with the filing of complaints more than two and a half years ago. Each had his federal ticket stamped and validated by a federal conductor at the district depot. As the train approached the en banc terminal, all of the parties were hopeful that their long journey was coming to an end.
 
 
 3
 Nevertheless, though able advocates had argued and reargued the great constitutional questions, at the last moment the parties found themselves sidetracked by a curious federal jurisdiction statute, 28 U.S.C. 2281, which requires that a three judge district court be convened whenever an injunction is sought against enforcement of a State statute. Regrettably, the command of Section 2281 leaves us no alternative but to send our litigants back to the district depot to have their federal tickets stamped and validated by three conductors instead of one. We must vacate the judgments of the district court in each of the four cases and remand for further proceedings leading to the convening of three-judge district courts. Because we have been detained at the jurisdictional gate, we do not reach the merits of the due process and mail censorship issues.
 
 II.
 
 4
 Our decision to remand these cases for consideration by three-judge district courts has been a difficult one. Section 2281 is written in deceptively simple language:
 
 
 5
 2281. Injunction against enforcement of State statute; three-judge court required
 
 
 6
 An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.
 
 
 7
 Courts have troubled over its application, however, since the statute was enacted more than 60 years ago in the wake of Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, and other cases in which federal district judges had peremptorily issued orders striking down state enactments. E.g. Raymond v. Chicago Union Traction Co., 1907, 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78.
 
 
 8
 As Professor Currie has noted, 'the three-judge provisions, despite their bland and technical phrasing, are products of battles between competing political forces over four persistent and significant issues: judicial review, national supremacy, sovereign immunity, and the use of injunction.' Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1 (1964). Correspondingly, competing judicial forces have interacted both to expand and to narrow the application of the statute, with the result that the present rules for appellate review of whether a three-judge court was required have become 'so complex as to be virtually beyond belief.' American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts 332 (Official Draft, 1969).
 
 
 9
 The Supreme Court has indicated that it views the three-judge court provision as 'a serious drain upon the federal judicial system,' Phillips v. United States, 1941, 312 U.S. 246, 250, 61 S.Ct. 480, 483, 85 L.Ed. 800, 804. The Court has therefore directed that the statute be narrowly construed:
 
 
 10
 The history of (the three-judge court statute) . . ., the narrowness of its original scope, the piecemeal explicit amendments which were made to it . . ., the close construction given the section in obedience to Congressional policy . . ., combine to reveal (the three-judge court statute) not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such.
 
 
 11
 Id., 312 U.S. at 250-251, 61 S.Ct. at 483, 85 L.Ed. at 804-805. See also Board of Regents v. New Left Education Project, 1972, 404 U.S. 541, 545, 92 S.Ct. 652, 30 L.Ed.2d 697, 702; Allen v. State Board of Elections, 1969, 393 U.S. 544, 561, 89 S.Ct. 817, 22 L.Ed.2d 1, 15.
 
 
 12
 In Board of Regents v. New Left Education Project, supra, the Supreme Court emphasized a second limiting doctrine-- that a three-judge court is required only when the statute or regulation in question is of statewide significance:
 
 
 13
 Such a court is required where the challenged statute or regulation, albeit created or authorized by a state legislature, has statewide application or effectuates a statewide policy. But a single judge, not a three-judge court, must hear the case where the statute or regulation is of only local import . . .. Thus, the 'term 'statute' in 2281 does not encompass local ordinances or resolutions,' . . . nor does it include a state statute having only a local impact, even if administered by a state official.
 
 
 14
 404 U.S. at 542-543, 92 S.Ct. at 653-654, 30 L.Ed.2d at 700. See also Moody v. Flowers, 1967, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643; Rorick v. Board of Commissioners, 1939, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242.
 
 
 15
 A third narrowing principle enunciated by the courts is that a three-judge court is required only when injunctive relief is sought. In other contexts the Supreme Court has indicated that a declaratory judgment ordinarily would interfere with and disrupt state proceedings just as much as would an injunction. E.g., Samuels v. Mackell, 1971, 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688, 693. Nevertheless, when only declaratory relief is sought, the three-judge court procedure generally need not be invoked. In Kennedy v. Mendoza-Martinez, 1963, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, the Court held that a three-judge court was not required to hear claims that certain provisions of the Nationality Act of 1940 were unconstitutional:
 
 
 16
 Whether an action solely for declaratory relief would under all circumstances be inappropriate for consideration by a three-judge court we need not now decide, for it is clear that in the present case the congressional policy underlying the statute was not frustrated by trial before a single judge. The legislative history of 2282 and of its complement, 2281, requiring three judges to hear injunctive suits directed against federal and state legislation, respectively, indicates that these sections were enacted to prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order. . ..
 
 
 17
 The present action, which in form was for declaratory relief and which in its agreed substance did not contemplate injunctive relief, involves none of the dangers to which Congress was addressing itself. The relief sought and the order entered affected an Act of Congress in a totally noncoercive fashion. There was no interdiction of the operation at large of the statute. It was declared unconstitutional, but without even an injunctive sanction against the application of the statute by the Government to Mendoza-Martinez. Pending review in the Court of Appeals and in this Court, the Government has been free to continue to apply the statute. That being the case, there is here no conflict with the purpose of Congress to provide for the convocation of a three-judge court whenever the operation of a statutory scheme may be immediately disrupted before a final judicial determination of the validity of the trial court's order can be obtained.
 
 
 18
 372 U.S. at 154-155, 83 S.Ct. at 560-561, 9 L.Ed.2d at 652-653. The decisiveness of this distinction between injunctive and declaratory relief was highlighted by the Second Circuit in Nieves v. Oswald, 2 Cir. 1973, 477 F.2d 1109. In Nieves inmates at the Attica Correctional Facility sought injunctive relief against the holding of disciplinary hearings and the imposition of punishment without certain procedural safeguards. The Second Circuit remanded for consideration by a three-judge district court, but indicated that if the inmates had sought only declaratory relief, no threejudge court would have been required. 477 F.2d at 1115 n. 15.
 
 
 19
 A final limitation on the application of 2281 is the rule that a three-judge court need not be convened when either the constitutional attack on the State statute or regulation is insubstantial, Ex parte Poresky, 1933,290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, or the constitutional defense is frivolous, Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512. This rule is not to be used lightly, however:
 
 
 20
 A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'
 
 
 21
 Goosby v. Osser, 1973, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42, quoting Ex parte Poresky, supra, 290 U.S. at 32, 54 S.Ct. 3. As the Second Circuit has suggested, 'Congress could not have intended to require three judges to be assembled when decision could not possibly go in any manner save one.' Utica Mutual Ins. Co. v. Vincent, 2 Cir. 1967, 375 F.2d 129, 131 n. 1, cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102. See also Kirkland v. Wallace, 5 Cir. 1968, 403 F.2d 413.
 
 
 22
 Despite the evident distaste with which the federal courts and the commentators view three-judge court jurisdiction, this series of limiting principles has been counterbalanced by several judicial doctrines that have had an expansive impact. For example, very soon after the enactment of the first threejudge court statute, which like the present 2281, provided only that an injunction shall not be 'granted' by a single judge, the Supreme Court construed the section to mean that a single judge also shall not deny an injunction: 'the application for interlocutory injunction should be heard before the enlarged court, whether the claim of unconstitutionality be or be not meritorious.' Ex parte Metropolitan Water Co., 1911, 220 U.S. 539, 545, 31 S.Ct. 600, 603, 55 L.Ed. 575, 578.
 
 
 23
 A second expansive doctrine has been the broad interpretation of the language 'State statute . . . or . . . order made by an administrative board or commission acting under State statutes.' In Phillips v. United States, supra, the Supreme Court said that to trigger the three-judge court procedure 'requires a suit which seeks to interpose the Constitution against enforcement of a state policy, whether such policy is defined in a state constitution or in an ordinary statute or through the delegated legislation of an 'administrative board or commission." 312 U.S. at 251, 61 S.Ct. at 483, 85 L.Ed. at 805. Later, the Court added: 'In our view the word 'statute' in (the three-judge court provision) is a compendious summary of various enactments, by whatever method they may be adopted, to which a State gives her sanction. . ..' American Federation of Labor v. Watson, 1946, 327 U.S. 582, 592-593, 66 S.Ct. 761, 766, 90 L.Ed. 873, 880. Thus, 2281 has been held to apply to a suit by prison inmates seeking an injunction against the enforcement of certain rules adopted by the California Director of Corrections, Gilmore v. Lynch, 9 Cir. 1968, 400 F.2d 228, cert. denied, 393 U.S. 1092, 89 S.Ct. 854, 21 L.Ed.2d 783, on remand, N.D.Cal.1970, 319 F.Supp. 105, aff'd sub nom., Younger v. Gilmore, 1971, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142, and in Nieves v. Oswald, supra, the Second Circuit held that a challenge to prison regulations 'sufficiently implicates well-considered state policy of state-wide application to require three-judge court adjudication of the claim for injunctive relief.' 477 F.2d at 1114.
 
 
 24
 A third amplifying principle requires that a three-judge court be convened if the plaintiff attacks the constitutionality of the statute as applied to him, even if it is conceded that the statute in general is valid. See Department of Employment v. United States, 1966, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414; Query v. United States, 1942, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616; Ex parte Bransford, 1940, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249. Determination of how and when this principle operates, however, involves delicate factual analysis on a case-by-case basis. See C. Wright, Law of Federal Courts 190 (1970); Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 37-50 (1964).
 
 
 25
 Perhaps most significant in the rapid expansion in the number of the three-judge courts is the interpretation of 2281 as a jurisdictional statute. An appellate court must, on its own motion, remand a case for trial by a threejudge court if it believes that a single judge should not have heard the case. See Kennedy v. Mendoza-Martinez, 1963, 372 U.S. 144, 153, 83 S.Ct. 554, 559, 9 L.Ed.2d 644, 652. For example, in Borden Co. v. Liddy, 8 Cir. 1962, 309 F.2d 871, the court of appeals raised the three-judge issue sua sponte and remanded the case over the protest of both parties.
 
 III.
 
 26
 Having set forth this panoply of conflicting doctrines and declarations, we now examine the facts of the four cases before us to explain why, reluctantly, we must remand for consideration by three-judge district courts.
 
 No. 73-1192-- SANDS v. WAINWRIGHT
 
 27
 This is an appeal by defendant, Director of the Florida Division of Corrections (hereinafter, 'Florida' or 'the State'), from a decision of the United States District Court for the Middle District of Florida, declaring Florida's prison disciplinary procedures constitutionally insufficient. Plaintiff Sands had filed a pro se, handwritten petition, which he characterized as a 'writ for habeas corpus for relief and full compensation.' The district court, however, treated the petition as a civil complaint pursuant to 42 U.S.C. 1983, alleging violations of Sands' civil rights; the court granted relief on that basis.[2]
 
 
 28
 The record in Sands discloses no mention of the three-judge court issue at trial by either party or by the district judge. The question has been posed to this Court on appeal in a most peculiar fashion. Counsel for plaintiff Sands, who prevailed below on the merits, now contend that the single district judge who granted their client such extensive relief was without jurisdiction to provide that relief. On the other hand, the State, which lost below on the merits and for whose protection the three-judge court requirement was enacted, argues on this appeal that the single district judge acted within his jurisdiction and that three judges were not required. Reason and logic whould dictate that, since 2281 was enacted to protect legislative policy from frustration by a single federal judge, and since the State here explicitly condones the failure to convene a three-judge court, the jurisdiction of the district court should be sustained and this Court should proceed to review the decision below on its merits. Reason and logic, however, have always been strangers to the arena of three-judge court jurisdiction. Section 2281 is a jurisdictional statute, Kennedy v. Mendoza-Martinez, supra; and defects of jurisdiction cannot be waived by the parties to a lawsuit. See Jackson v. Ashton, 1834, 8 Pet. (33 U.S.) 148, 8 L.Ed. 898; Mitchell v. Maurer, 1934, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338.
 
 
 29
 In its Reply Memorandum of Law on Three-Judge Court Issue,[3] Florida urged two reasons for upholding the jurisdiction of the single district judge in Sands: 1) injunctions against further enforcement of State statutes or regulations were neither sought by plaintiff nor issued by the district court; and 2) the Florida regulations in question were promulgated by one man rather than by an 'administrative board or commission.' Having studied the record in this case and decisions in related cases, we find the State's first contention inaccurate and its second contention irrelevant.
 
 
 30
 The record demonstrates clearly that plaintiff Sands did seek an injunction against the enforcement of State regulations adopted pursuant to statutory authorization, and that the district judge issued such an injunction. Pursuant to Florida Statutes 945.21, F.S.A.,[4] the Division of Adult Corrections of the Florida Department of Health and Rehabilitative Services adopted, as of December 1, 1971, certain Administrative Rules and Regulations governing the Division. Chapter 10B-3.06 of the Rules and Regulations governs 'Discipline'; it sets forth, inter alia, certain rules of conduct, punishments that may be imposed by a disciplinary committee, and procedures that must be followed in imposing punishment for violation of the rules. Regarding disciplinary proceedings, Chapter 10B-3.06 provides:
 
 
 31
 (3) Upon any violation by an inmate of such rules or regulations, detailed written report shall be made by the employee or employer who have knowledge of such violation. Said report shall be investigated and forwarded to the designated committee. The committee shall hold a hearing with the inmate present to determine whether or not such inmate is guilty of such violation. The committee may call before it any persons having knowledge of the violation, or may postpone action pending further investigation. The Committee shall make a written report to the superintendent of its findings together with its recommendations for punishment of the inmate, if any. The superintendent may approve, disapprove, or modify the findings or recommendations of the committee or may refer the matter for further investigation and shall so indicate on said written report. The written report together with the approval, disapproval, or modification of the superintendent shall then be forwarded to the Director who may approve, disapprove, modify the terms thereof or refer for further investigation. Copies of the written report shall be maintained in the inmate's record jacket and shall also be forwarded to the Florida Parole and Probation Commission.
 
 
 32
 On the basis of Chapter 10B-3.06 and other official documents, pre-trial stipulations, and testimony at trial, the district court entered the following specific findings of fact:
 
 
 33
 1. An inmate confined in administrative segregation status is not necessarily afforded a hearing, notice or any other rights whatsoever concomitant with his placement in such status.
 
 
 34
 . . . .te
 
 
 35
 4. An inmate charged with an offense in a disciplinary report has no right to
 
 
 36
 a. present evidence,
 
 
 37
 b. call witnesses in his behalf,
 
 
 38
 c. confront his accuser,
 
 
 39
 d. confront his accuser's witnesses,
 
 
 40
 e. counsel or counsel substitute,f. cross-examine adverse witnesses,
 
 
 41
 g. a public hearing,
 
 
 42
 h. an appeal,
 
 
 43
 i. invoke a privilege against self-incrimination, or
 
 
 44
 j. a record of the proceedings.
 
 
 45
 5. An inmate charged with an offense in a disciplinary report has nomeaningful protective devices available to him that will insure
 
 
 46
 a. that he will receive a fair hearing at a meaningful time and in a meaningful manner, or
 
 
 47
 b. that he will be heard by an impartial fact finder and decision maker, or
 
 
 48
 c. that he will receive a decision based on the evidence, or
 
 
 49
 d. that there will be a record sufficient to justify the disciplinary committee action.
 
 
 50
 In his initial pro se complaint, plaintiff Sands ineloquently but unmistakable sought to enjoin further enforcement of the regulations as they were applied. Sands alleged that, by denying him an opportunity to present witnesses in his own behalf, or to cross-examine the witnesses against him, or to have counsel for his defense, corrections officials were depriving him of his constitutional rights. Record, Vol. I, Document No. 2, at 16-17. He asked inter alia, 'That the Respondent should be ordered to give Petitioner a trial with witnesses be present for and against Petitioner, and a inpartial judge shall determine the case.' Id. at p. 23. Although the court would not have had to declare the statute or regulations unconstitutional on their face in order to grant the relief requested by Sands, it would have had to declare the regulations unconstitutional as applied and to enjoin their further enforcement unless additional procedural safeguards were provided.
 
 
 51
 Indeed, this is exactly the course the district court took. In its Order and Opinion of Court, filed January 5, 1973, the district court granted a 'declaratory judgment' setting forth the minimum procedures required by the Constitution and finding that the procedures provided by the Florida Division of Corrections did not meet those standards. That the true impact of the court's judgment was injunctive, however, is evident from its Order filed less than a week later, on January 11, 1973:
 
 ORDER
 
 52
 It is, sua sponte,
 
 ORDERED:
 
 53
 That implementation of this Court's order dated January 5, 1973, shall occur on Tuesday, January 23, 1973.
 
 
 54
 Record, Vol. II, Document No. 30. In its supplementary Order, filed the same day, the district court explained: 'Thus, the Division of Corrections has in effect been allowed a period of 17 days to implement the requirements discussed in the Court's order of January 5, 1973.' Recore, Vol. II, Document No. 32. Thus, although judicial efficiency and the interests of all parties involved might best be served by sustaining the jurisdiction of the single district judge and by granting review on the merits by the en banc Fifth Circuit, we are forced to conclude that the single district judge has granted exactly the kind of relief 2281 has proclaimed must be 'determined by a district court of three judges.'
 
 
 55
 The State's second proposed ground for avoiding the mandate of 2281 is that Florida's prison regulations were promulgated by one man rather than by 'an administrative board or commission.' The distinction Florida asks this Court to make was demonstrated starkly at oral argument:
 
 
 56
 JUDGE SIMPSON: Is this the basis of your argument, Mr. Dearing-- that, if the legislature had delegated this power to a board of three people, we would have a three-judge case, but since they delegated it to one man we do not? Is that what you're telling us?MR. DEARING: (counsel for the State): Yes, Your Honor.
 
 
 57
 This distinction has been rejected explicitly by the Ninth Circuit, whose finding of three-judge court jurisdiction was vindicated by the Supreme Court, Gilmore v. Lynch, supra. To the contention that 2281 was inapplicable because the California regulations in question were promulgated by one man (the State Director of Corrections), the Ninth Circuit responded: 'The regulation here is statewide in its application and is as effective and authoritative in its establishment of state policy as if it had been announced by a board of more than one member.' 400 F.2d at 230. We must give the same response here to the State of Florida. At oral argument, counsel for the State conceded that the Florida prison regulations are not within the exception enunciated in Board of Regents v. New Left Education Project, supra, but are of statewide application:
 
 
 58
 MR. DEARING: The Division of Corrections regulations apply . . . throughout the State of Florida to all centers of incarceration, whether it be maximum security all the way down to road camps.
 
 
 59
 Sands v. Wainwright meets all of the tests for three-judge court jurisdiction under 2281. Neither of the arguments offered by the State, and none of the narrowing principles enunciated by the courts, can save these litigants from yet another trial before they are awarded the ultimate decision on the merits they began seeking on May 12, 1971.
 
 No. 72-2471-- BAKER, et al. v. ESTELLE
 
 60
 Plaintiffs are four inmates[5] of the Texas Department of Corrections (TDC). They brought this civil action under 42 U.S.C. 1983, on their own behalf and, pursuant to Fed.R.Civ.P. Rule 23, on behalf of the class of TDC prisoners affected by the policies, practices, or acts of Texas prison officials challenged in this case. In the district court the inmates sought declaratory and injunctive relief, contending: 1) that prison disciplinary procedures are constitutionally inadequate in that those procedures subject inmates to solitary confinement and loss of good time without due process of law, and 2) that the TDC practice of reading and censoring attorney-inmate correspondence is unconstitutional.
 
 
 61
 This case has all the earmarks of a suit requiring consideration by three judges. Unlike Sands, no doubt arises here that the relief sought is injunctive. If the relief sought had been granted,[6] the Texas Department of Corrections would have been compelled to alter substantially its entire method of operation as regards prison disciplinary proceedings. Both the 1953 and the 1973 Rules and Regulations of the Texas Department of Corrections, and the statute pursuant to which they were promulgated,[7] govern all institutions in the state penitentiary system-- some fifteen units in all-- and thus are clearly 'statewide' in application. Cf. Board of Regents v. New Left Education Project, supra. That the constitutional issues raised were substantial demands no more proof than to remember that this Court voted to hear the case en banc before a panel opinion was published. See also cases and authorities cited at footnote 1, supra.
 
 
 62
 Nevertheless, plaintiffs argue that the single district judge did have jurisdiction to decide this case, because their complaint did not seek to enjoin the enforcement of any State statute or regulation:
 
 
 63
 Here, the complaint made no mention of any regulation whatever and did not seek, by way of relief, an injunction against the enforcement of any regulation. The prayer of the complaint sought, and appellants now seek, a declatory judgment that certain prison practices violate appellants' constitutional rights, an injunction against severe disciplinary punishments without procedural due process and an injunction against 'reading, censoring, copying, withholding or delaying' prisoner-attorney mail. In other words, this case involves the constitutionality of certain prison practices, not state-wide regulations.
 
 
 64
 Appellants' Memorandum on Three-Judge Court Issue, at 2-3.
 
 
 65
 Plaintiffs' attempted distinction between 'practices' and 'regulations' cannot be sustained; in this case, it is a distinction without a difference. No party has contended that Texas prison officials are acting outside the scope of their statutory authority in carrying on these allegedly unconstitutional practices. The 'practices' whose enforcement the inmates seek to enjoin are, in reality, the Rules and Regulations of the Texas Department of Corrections, as applied. Plaintiffs claim that no particular paragraph or section of those Rules and Regulations-- either the 1953 version in effect at the time this litigation was initiated, or the July 9, 1973, version currently in effect-- is constitutionally offensive, and that no injunction is sought against any such paragraph or section. The entire thrust of plaintiffs' argument, however, is that the Rules and Regulations, as a whole and as applied, are constitutionally deficient standing alone. More complete and more specific regulations must be mandated in order to assure that the present 'practices' will not be continued.
 
 
 66
 Plaintiffs seek more than hollow symbolic relief. If a federal court were to uphold the constitutional arguments by plaintiffs' counsel throughout this litigation, that court would have to insist that new regulations be instituted and that further enforcement of present regulations, unmodified, be enjoined. This is exactly the type of relief 2281 reserves for district courts of three judges.
 
 No. 72-3351-- GUAJARDO, et al., v. ESTELLE
 
 67
 Plaintiff Guadalupe Guajardo, Jr., filed suit pursuant to 42 U.S.C. 1983, on behalf of himself and other inmates of the Texas Department of Corrections (TDC), challenging TDC's practice of reading and censoring inmate correspondence. The censorship policies of which plaintiffs complained were being carried out under the 1953 Rules and Regulations of the Texas Department of Corrections; plaintiffs attacked a number of those 1953 Rules as unconstitutional either on their face or as applied. After several days of hearings before the United States District Court for the Southern District of Texas, the district judge, at the request of Dr. Beto, who was then director of TDC, recessed the proceedings to give TDC an opportunity to present revised regulations to the court. Dr. Beto presented the district court a revised set of Rules and Regulations, dated July 10, 1972, including new guidelines for inmate correspondence. Hearings were resumed, and on September 25, 1972, the district court entered its Memorandum and Order in Guajardo v. Beto, which the court had consolidated with Guajardo v. McAdams. The court's Memorandum and Order is reported at 349 F.Supp. 211.
 
 
 68
 In the consolidated cases, the court entered a twelve-paragraph decree of relief. 349 F.Supp. at 221-222. Eleven of the twelve paragraphs dealt with inmate correspondence; their effect was to modify eight of the revised 1972 Rules and to strike four others in their entirety. The district court concluded this decree by ordering: 'The Texas Department of Corrections is hereby enjoined from following any procedure in conflict with the above outlined principles. . ..' As each of the 1972 TDC Rules and Regulations constituted 'an order made by an administrative board or commission acting under State statutes,' see Tex.Rev.Civ.Stat.Ann., Art. 6166j, footnote 7 supra, the Order of the single district judge below is in direct contravention of the mandate of 28 U.S.C. 2281.[8]
 
 
 69
 Appointed counsel for plaintiffs, both orally and in their excellent brief to this Court on the three-judge court issue, have argued forcefully that three judges were not required because: 1) at the outset of the litigation the trial court was not asked to enjoin the operation of a State statute or administrative order; and 2) the regulations at issue are not of statewide importance. Regretfully, we are unable to sustain either argument.
 
 
 70
 The first contention is based upon the fact that Plaintiffs originally sought only to have 'policies and practices' enjoined; they were questioning not specific regulations, but the results obtained through use of the very general 1953 Rules and Regulations. This is virtually the same argument as that advanced by plaintiffs in Baker v. Estelle, supra, and it must fail for the same reasons. Moreover-- even assuming arguendo that this case at its outset did not call for three judges-- once the more specific 1972 Rules and Regulations were introduced and it became clear that specific rules would have to be enjoined in order to provide the requested relief, the district judge came under an obligation to take the appropriate steps toward convening a three-judge court. The general rule that the determination of three-judge court status is to be made on the basis of the allegations of the complaint, Nieves v. Oswald, supra, 477 F.2d at 1112, must give way to the jurisdictional command of 2281.
 
 
 71
 Plaintiffs' second argument-- that the regulations are not of statewide importance-- is not persuasive. Plaintiffs rely on Board of Regents v. New Left Education Project, supra; that reliance is misplaced, however. The Supreme Court held in New Left that the regulations of the Board of Regents were not of statewide applicability because they did not govern all State colleges and universities; but the TDC Rules and Regulations do apply to all State prison units.[9]
 
 No. 73-1497-- GUAJARDO v. McADAMS
 
 72
 This case arose out of and during the pendency of Guajardo v. Beto, and the two suits were consolidated at trial. The substantive issue on this appeal was the constitutionality of the TDC practice of placing certain inmates in a segregated status for non-punitive reasons without providing a hearing.
 
 
 73
 As regards the three-judge court issue, the two Guajardo cases come to the en banc Fifth Circuit in almost identical procedural postures. The only difference lies in the fact that the district court reacted more favorably to the TDC's revised regulations on administrative segregation than to its mail censorship regulations; with but one exception, the court approved the new procedures dures relating to administrative segregation. This distinction has no effect, however, on whether a three-judge court should have been convened. Section 2281 does not differentiate between injunctions against one regulation and injunctions against several regulations. Moreover, the obligation to call for a three-judge court fell upon the district judge when he became aware that, in order to grant the relief requested, the court would have to issue the type of injunction prohibited by 2281; the obligation is not contingent upon plaintiffs' ultimate success or failure. See Exparte Metropolitan Water Co., supra.
 
 IV
 
 74
 We reach our decision today without joy or celebration. As we have noted, the outpouring of legal and judicial energy in these cases has been overwhelming. That we must instruct the litigants and the courts involved to begin anew is a victory for no one.
 
 
 75
 Had we been at liberty to decide the three-judge court issue by applying the rationale of 2281 to the facts and equities of the cases before us, we would have reached a different result. The origin and entire history of three-judge court provisions, as applied to State statutes, demonstrate that their purpose is 'procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy.' Phillips v. United States, supra, 312 U.S. at 251, 61 S.Ct. at 483, 85 L.Ed. at 805. In two of the cases presently before us -- Sands and Baker-- the State raised not the slightest objection in the court below to the authority of a single federal judge to reach a decision on the merits. In the two Guajardo cases the State took the position that jurisdiction lay with a three-judge court only after the trial judge had requested briefs on the issue; the State made no objection to the court's failure to rule on the three-judge court question.[10] The State of Florida has argued in the Sands case that a three-judge court should not be convened. Furthermore, even if Florida or Texas had found single-judge disposition offensive, the type of review afforded here-- by fifteen circuit judges, including three from Florida and four from Texas10A -- would seem to assure greater protection against improvident action than even a three-judge district court. Unfortunately, the technical and jurisdictional nature of 2281 does not permit us to incorporate equitable considerations into our decision. / 11/We are not unmindful that this result may raise the haunting specter of hundreds or even thousands of three-judge courts, convened to hear civil rights suits brought by prison inmates and other classes of litigants. If that prospect becomes reality, with its accompanying burden on judicial resources, we can only plead that we were powerless to obviate it.[12] We have taken no bold new steps today, but have merely followed in the footsteps of our predecessors. The statutory strait jacket and Supreme Court commands leave us no maneuver to unshackle these cases from the outmoded confines of a 2281 court.
 
 
 76
 The decisions of the respective district courts in No. 73-1192, No. 72-2471, No. 72-3351, and No. 73-1497 are vacated and remanded for appropriate proceedings under 28 U.S.C. 2284, leading to the convening of three-judge district courts.
 
 
 77
 Vacated and remanded.
 
 BROWN, Chief Judge (concurring):
 
 78
 Concurring fully in the opinion I am paraphrasing Judge Friendly's juridical quip that the opinion is bound to be right because it is so wrong.[1] Right in the sense that this is what the statute commands. Wrong in the sense of the administrative monstrosity such cases would bring about with three Judges sitting patiently while hearing run-of-the-mill factual recitations and many conflicts from the scores of witnesses appearing in airing their grievances about prison operations.[2]
 
 
 79
 But from the bad often comes good and it just may be that this result will stimulate the House into joining the Senate in S.663 and S.271 (which repealed 28 U.S.C.A. 2281, 2282) by which the requirements of a three-judge court are substantially eliminated.
 
 COLEMAN, Circuit Judge (concurring):
 
 80
 I concur in the result.
 
 
 
 *
 Senior Circuit Judge Ingraham sat as a member of the original panel in Cause No. 72-2471, Baker v. Beto and under Allen v. Johnson, 5th Cir., 1968, 391 F.2d 527, he participated in the hearing and decision of the Baker case. Judge Ingraham has not participated in any of the other cases
 
 
 [1]
 On due process in prison disciplinary and administrative segregation proceedings, see, e.g., Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; Nolan v. Scafati, 1 Cir. 1970, 430 F.2d 548; Sostre v. McGinnis, 2 Cir. 1971, 442 F.2d 178, cert. denied, 1972, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740, and Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254; United States ex rel. Miller v. Twomey, 7 Cir. 1973, 479 F.2d 701; McDonnell v. Wolff, 8 Cir. 1973, 483 F.2d 1059; Pearson v. Townsend, D.S.C.1973, 362 F.Supp. 207; United States ex rel. Neal v. Wolfe, E.D.Pa.1972, 346 F.Supp. 569; Landman v. Royster, E.D.Va.1971, 333 F.Supp. 621; Clutchette v. Procunier, N.D.Cal.1971, 328 F.Supp. 767; National Advisory Commission on Criminal Justice Standards and Goals, Corrections, Standard 2.12 (1973); S. Krantz, et al. (Center for Criminal Justice, Boston University School of Law), Model Rules and Regulations on Prisoners' Rights and Responsibilities (1973); Millemann, Prison Disciplinary Hearings and Procedural Due Process-- The Requirement of a Full Administrative Hearing, 31 Md.L.Rev. 27 (1971); Turner, Establishing the Rule of Law in Prisons: A Manual for Prisoners' Rights Litigation, 23 Stan.L.Rev. 473 (1971); Note 50 Texas L.Rev. 155 (1971)
 On prison interference with inmate mail, see, e.g., Goodwin v. Oswald, 2 Cir. 1972, 462 F.2d 1237; Smith v. Robbins, 1 Cir. 1972, 454 F.2d 696, Evans v. Moseley, 10 Cir., 455 F.2d 1084, cert. denied, 1972, 409 U.S. 889, 93 S.Ct. 160, 34 L.Ed.2d 146; Barnett v. Rodgers, 1969, 133 U.S.App.D.C. 296, 410 F.2d 995; Procunier v. Martinez, N.D.Cal.1973, 465 F.Supp. 1092, prob. juris. noted, 1973, 412 U.S. 948, 37 L.Ed.2d 1000; Lamar v. Kern, S.D.Tex.1972, 349 F.Supp. 222; National Advisory Commission on Criminal Justice Standards and Goals, Corrections, Standard 2.17 (1973); Stern, Prison Mail Censorship: A Nonconstitutional Analysis, 23 Hast.L.J. 995 (1972); Comment, Prison Mail Censorship and the First Amendment, 81 Yale L.J. 87 (1971); Recent Cases, 86 Harvard L.Rev. 1607 (1973).
 
 
 [2]
 The district court held, inter alia: 1) that confinement in both punitive and administrative segregation and the loss of any type of gain time constitute 'grievous losses'; 2) that an inmate's interest in avoiding wrongful imposition of such grievous losses outweighs the governmental interest in summary adjudication; 3) that prior to the imposition of these grievous losses prison authorities must conduct a hearing 'appropriate to the nature of the loss'-- including ten specific procedural safeguards when the loss is confinement in disciplinary segregation or loss of gain time, and three less restrictive requirements when the loss is administrative segregation; and 4) that, acting under its present rules and regulations, Florida was not providing all of these constitutionally mandated procedures
 
 
 [3]
 On September 27, 1973, Florida filed a Memorandum of Law on Three-Judge Court Issue, arguing that a three-judge court should have been convened. In its Reply Memorandum, filed October 9, 1973, the State reversed its position, asserting that 'careful research and further consideration of this important question leads Appellants to believe their initial response drew inaccurate conclusions of law.'
 
 
 [4]
 945.21 Regulations of the division
 (1) The division is authorized to adopt and promulgate regulations governing the administration of the correctional system and the operation of the division. In addition to specific subjects otherwise provided for herein, regulations of the division may relate to:
 (a) Conduct to be observed by prisoners;
 (b) Punishment of prisoners;
 . . . .men
 
 
 [5]
 Plaintiff Sam Bernard, Jr. asked that his complaint be dismissed. The other three named plaintiffs have now been released from prison. Because this is a class action, the release of the individual parties does not moot the case. See Goosby v. Osser, 1973, 409 U.S. 512, 514 n. 2, 93 S.Ct. 854, 856 n. 2, 35 L.Ed.2d 36, 39-40 n. 2, and cases cited therein. The fact of plaintiffs' release merely serves to highlight the protracted nature of this litigation: complaint was filed March 26, 1971; judgment was entered on March 13, 1972, by the United States District Court for the Southern District of Texas, denying all relief; oral argument was heard before a panel of the Fifth Circuit in December, 1972; before any panel opinion was published the Fifth Circuit voted to rehear the case en banc; oral argument was heard before the Court sitting en banc on October 18, 1973. Until only a few weeks before the en banc hearing, the three-judge court issue had not been raised by any of the parties, by the federal district judge who tried the case, or by any member of the Fifth Circuit panel that heard the case
 
 
 [6]
 Of course, the fact that relief was not granted here in no way diminishes the impact of the 2281 mandate. Ex parte Metropolitan Water Co., supra
 
 
 [7]
 Tex.Rev.Civ.Stat.Ann., Art. 6166j, provides that the Director of Corrections, with the consent of the Texas Board of Corrections, 'shall have power to prescribe reasonable rules and regulations governing the humane treatment, training, and discipline of prisoners . . ..'
 
 
 [8]
 The district court apparently asked the parties to submit briefs on the question of whether a three-judge court should be convened. Counsel briefed the issue, but the court never ruled on it
 
 
 [9]
 That city and county jails are outside the ambit of TDC Rules does not diminish the statewide importance of those Rules. City and county jails are primarily locally-controlled institutions; they provide no analogy to the 20 four-year state colleges and universities that were outside the coverage of the Regents' rules in New Left. See Nieves v. Oswald, supra
 
 
 [10]
 Even at oral argument on this appeal, the State's contention that a three-judge court should have been convened apparently arises more from its belief that the law requires this result than from any conviction that justice or the State's interest would be better served:
 MR. PENA (counsel for the State of Texas): In our primary briefs we did not raise the issue . . .. We had presented our evidence. We had worked up some great rules, we thought, under the supervision of the (district) court; and we wanted the matters to be settled one way or the other. We did not submit a brief on the three-judge issue until the Court (of Appeals) asked us to. At that time we had to take the position, and we still take the position, that this is a proper three-judge court (case) . . ..
 10A In Baker the appeal was heard by sixteen circuit judges, including five from Texas.
 
 
 [11]
 The present three-judge court statutes have been roundly criticized by legal scholars. Though virtually all have agreed that the law should be modified, no consensus has yet emerged as to what form that modification should take. See, e.g., American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts 1374-1376 and Commentary thereto (Official Draft 1969) (ALI Study); Ammerman, Three-Judge Courts: See How They Run., 52 F.R.D. 293; Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.ChiL.Rev. 1 (1964); Comment, Reviewing the Grant of a Three-Judge Court, 69 Colum.L.Rev. 146 (1969); Comment, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv.L.Rev. 299 (1963); Comment, The Three-Judge Court Reassessed: Changing Roles in Federal-State Relationships, 72 Yale L.J. 1646 (1963)
 An least one area of agreement apparently has been reached, however. As the American Law Institute has observed:
 It has been said that the most obnoxious feature of the entire three-judge scheme' is the rule that the requirement for three judges is jurisdictional, and that an appellate court on its own motion must remand the case for trial by three judges if it believes that it was wrror for a single judge to act . . .. If the party for whose benefit the three-judge court is required has not asked for such a benefit, and has come to a court of appeals where three judges will pass on the merits of his position, there is no point in sending the matter back to be heard again in the district court.
 ALI Study, supra, at 331 (quoting Currie, supra, 32 U.Chi.L.Rev. 1, 77).
 
 
 [12]
 The dramatic and much publicized increase in the number of three-judge court hearings in the 1960's appears to have leveled off since fiscal year 1970. For example, the total number of three-judge cases increased by 44% From 1964 to 1967 and by 70% From 1967 to 1970, but only by 10% From 1970 to 1973. The volume of three-judge court cases-- 320 in 1973-- represented only about 0.3% Of all cases filed in the federal district courts. Administrative Office of the United States Courts, Annual Report of the Director (1973)
 
 
 [1]
 Gulf Oil Corp. v. Panama Canal Co., 5 Cir., 1969, 407 F.2d 24, 26-27, 1969 A.M.C. 1, 4, n. 3:
 In Lawrence v. United States, 5 Cir., 1967, 378 F.2d 452, 467, we put it this way: 'The painstaking opinion by Judge Waterman-- painstaking not only in the careful exploration of every conceivable way to find jurisdiction, but also painstaking in the evident sense of trying to find an escape from a painfully unfortunate result-- closes all of the doors to the District Court.' See the statement of Judge Friendly in Spanos v. Skouras Theatres Corp., 2 Cir., 1966, 364 F.2d 161, 167: 'The compulsion felt by my brothers * * * to reach what seems a palpably unjust result reminds me of Chief Justice Erle's observation as to the occasional predilection of the best of judges for 'a strong decision,' to wit, one 'opposed to common-sense and to common convenience."
 
 
 [2]
 In this Circuit we have had much experience in three-Judge factual cases, especially in Louisiana where credibility choices were close, and in Dreyer v. Jalet, S.D.Tex., 1972, 349 F.Supp. 452, affirmed, 5 Cir., 1973, 479 F.2d 1044, Judge Bue heard prison-based witnesses for over six weeks