477 F.2d 1109
 George NIEVES et al., Plaintiffs-Appellants-Appellees,
v.
Russell G. OSWALD, Commissioner of Correctional Services,
and Vincent R. Mancusi, Superintendent of Attica
Correctional Facility,
Defendants-Appellees-Appellants.
 Nos. 462, 737, Dockets 72-1974, 72-2322.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 21, 1973.
Decided April 20, 1973.
 
 Herman Schwartz, Buffalo, N. Y. (Edward I. Koren, ACLU Prison Rights Project, Buffalo, N. Y., Kenneth Kimerling, National Lawyers Guild, New York City, William E. Hellerstein, Legal Aid Society of New York, Morton Stavis, New York City, Stanley A. Bass, New York City, on the brief), for plaintiffs-appellants-appellees.
 John H. Stenger, Sp. Asst. Atty. Gen., Buffalo, N. Y. (Louis J. Lefkowitz, Atty. Gen. of N. Y., on the brief), for defendants-appellees-appellants.
 Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Once again we find ourselves dealing with the complexities of 28 U.S.C. Sec. 2281, which has the deceptively simple heading in the United States Code of "Injunction against enforcement of State statute; three-judge court required." That section and its "Federal statute" counterpart, 28 U.S.C. Sec. 2282, have been accurately described as creating many problems "so complex as to be virtually beyond belief."[1] This case is a depressingly excellent example, since it presents not merely familiar and difficult problems of jurisdiction, but the added complexity of a last minute attempt to affect appellate review by a motion to withdraw the prayer for injunctive relief. So far as we know, this nuance is an addition to three-judge court esoterica in this circuit. See Part III infra. This litigation offers further proof, if such is needed, of the need for modification or repeal of the three-judge court statutory scheme.[2]
 
 
 2
 * Appellants are nine prisoners at the Attica Correctional Facility who sue for themselves and on behalf of all other inmates who were at that institution at the time of the notorious prison revolt in September 1971, and who, as a result of alleged misconduct during that uprising, are subject to disciplinary hearings. Appellants are also possible targets of a special grand jury empaneled in November 1971 to investigate the unfortunate events at Attica. The complaint, brought under 42 U.S.C. Sec. 1983 in the United States District Court for the Western District of New York, alleges that the conduct of disciplinary proceedings in New York prisons denies or threatens to deny them various rights guaranteed by the United States Constitution. The complaint prays for preliminary and permanent injunctive relief against the holding of disciplinary hearings and the imposition of punishment without certain procedural safeguards; declaratory and other relief is also sought.
 
 
 3
 In November 1971, defendants consented to a temporary stay of disciplinary hearings involving any charges against inmates arising from the events at Attica until the special grand jury made its report or until the merits of plaintiffs' action were determined. Plaintiffs moved to convene a three-judge court, as the complaint effectively sought to restrain "the enforcement, operation, or execution" of state regulations, 28 U.S.C. Sec. 2281, which govern disciplinary proceedings in state prisons.[3] In March 1972, Chief Judge John O. Henderson denied that motion as well as defendants' motion to dismiss the complaint for failure to state a claim upon which relief could be granted.[4] In June 1972, the district court ruled against plaintiffs on the merits, except that it granted the plaintiff class limited rights to counsel, in order to protect their privilege against self-incrimination, including the right to consult with counsel prior to any proceeding and to have counsel present during those portions of the proceeding when the inmate is present. As to that, the court ordered injunctive relief. Plaintiffs appeal from denial of the application for a three-judge court[5] and from denial of all but limited relief on the merits of their constitutional claims; defendants appeal from the ruling that permitted limited right to counsel. Because we believe that Judge Henderson improperly refused to convene a three-judge court,[6] we do not reach the various contentions of the parties on the merits, and we reverse and remand for further proceedings.
 
 II
 
 4
 In Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962) (per curiam), the Supreme Court stated that when an application for a three-judge court is addressed to a district judge, his inquiry is limited to determining (1) whether the constitutional question is substantial; (2) whether the complaint at least formally alleges a basis for equitable relief; and (3) whether the case otherwise comes within the requirements of the three-judge statute. If all criteria are established, the single judge must convene a statutory three-judge court. See Abele v. Markle, 452 F.2d 1121, 1126 (2d Cir. 1971).
 
 
 5
 Whether these criteria were met in this case depends in turn on the allegations of the complaint, see Goosby v. Osser, 409 U.S. 512, 521 n. 7, 93 S.Ct. 854, 860, 35 L.Ed.2d 36 (1973), all of which are deemed to be true. Id. Plaintiffs claim that the procedures governing disciplinary hearings commenced or to be commenced-procedures required by New York regulations cited at note 3 supra-are constitutionally deficient in, inter alia, the following respects: Inmates are denied an opportunity to present witnesses in their defense and to confront adverse witnesses against them, since they are not permitted to be present when adverse testimony is taken; the rules governing prisoner conduct are so vague as to be void; the testimony of adverse witnesses is unsworn; inmates are not given Miranda-type warnings even though statements made in disciplinary proceedings may be used in subsequent criminal prosecutions; inmates are denied assistance of counsel or of effective counsel substitute; inmates receive inadequate notice of the rule allegedly violated, of the rules under which fact-finding is to be had, and of the precise facts underlying the charges; and inmates are denied a decision by an unbiased decision-maker and are not accorded a written opinion by the deciding tribunal based upon substantial evidence.
 
 
 6
 As Judge Henderson perceived in his June 1972 decision on the merits, plaintiffs' constitutional attack is really based on two distinct theories. Most broadly, plaintiffs challenge the application of the regulations, which do not require the above-claimed procedural safeguards, to any serious disciplinary proceeding in state prisons. Indirectly, by raising questions of self-incrimination, plaintiffs also challenge on a somewhat narrower basis the absence of these safeguards when inmates are threatened, as are plaintiffs, with prison-disciplinary and subsequent criminal proceedings. Judge Henderson believed that neither theory required a three-judge court. While his March 1972 opinion denying plaintiffs' motion to convene did not squarely address the first, more general, theory, his later opinion reflects his conclusion that the constitutional questions thus raised were insubstantial. As to the narrower theory, he concluded in the earlier opinion that it failed to satisfy the requirements of section 2281, as the claim raised "not . . . a question of state-wide concern, but rather only local concern precipitated as a result of the unusual . . . occurrences at Attica." We think both conclusions were erroneous.
 
 
 7
 Turning to plaintiffs' broader theory, an insubstantial federal question is presented if the claim is " 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of [the Supreme C]ourt as to foreclose the subject . . . .' " Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933) (citations omitted). Decisions of this court, binding as they are on the district courts within this circuit, whether they be of the single or three-judge variety, may also foreclose a constitutional challenge as insubstantial. See Lewis v. Rockefeller, 431 F.2d 368, 371 (2d Cir. 1970). Judge Henderson believed that plaintiffs' more general constitutional attack was "a mirror image of the arguments presented to and rejected" by this court, sitting en banc, in Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) and 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). We do not believe, however, that our decision in Sostre renders plaintiffs' Constitutional theory "essentially fictitious" or "wholly insubstantial," Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), or "obviously without merit," Ex Parte Poresky, supra. As the Supreme Court has only recently informed us:
 
 
 8
 The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions which merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. Sec. 2281.
 
 
 9
 Goosby v. Osser, supra, 409 U.S. at 518, 93 S.Ct. at 858.
 
 
 10
 Applying these guidelines here, we note first that Sostre disclaimed comment on "the constitutional adequacy" of the state regulations now before us. 442 F.2d at 199 n. 42. Moreover, not all the procedural guarantees here sought were expressly considered by us in Sostre, although we did reject the claim that due process necessarily entitled a prisoner to all of the following protections: legal counsel, confrontation, cross-examination, right to call witnesses, and "a written statement of evidence and rationale." Id. at 196-198. While Judge Kaufman's opinion did not specifically address itself to other protections that these plaintiffs contend are due them but denied-e. g., an impartial tribunal,[7] rules of conduct which are not vague, adequate written notice of the rule violated-the district court in Sostre had mandated most of these, and we registered our "disagreement with Judge Motley's conclusion that each of the procedural elements incorporated in her mandatory injunction are necessary constitutional ingredients of every proceeding resulting in serious discipline of a prisoner." Id. at 198; cf. id. at 203. We held that, at a minimum, a prisoner is entitled to be "confronted with the accusation, informed of the evidence against him . . . and afforded a reasonable opportunity to explain his actions." Id. at 198. In providing these minima and rejecting universal application of those safeguards required by Judge Motley, however, we did not state that none of the rejected safeguards were ever to be constitutionally required in any case;[8] yet there is merit to plaintiffs' assertion that this is an inevitable effect if the regulations of which they complain apply to all serious disciplinary proceedings without exception. Plaintiffs argue that such a result is not required by Sostre and is unconstitutional; the Sostre court observed, id. at 196, that due process safeguards vary with factual settings. While cross-examination and confrontation (to take two examples) may have been unnecessary to accurate resolution of facts on which Sostre's punishment was based, plaintiffs assert them to be critical here or whenever punishment turns on recollections and perceptions of adverse witnesses. Although we express no view as to the merits of these and other contentions, we hold that they are not "inescapably" foreclosed by Sostre.
 
 
 11
 Even more significantly, plaintiffs' more particularized theory of relief-the unconstitutionality of the regulations as applied[9] where both disciplinary and criminal proceedings against an inmate are in the offing-unquestionably raises grave constitutional issues. Under these special circumstances, plaintiffs say, a prisoner's dilemma is particularly acute: Since he cannot speak for fear of self-incrimination and cannot call favorable witnesses or cross-examine adverse ones, he can neither explain his actions nor refute the charges against him. See Clutchette v. Procunier, 328 F.Supp. 767, 778-779 (N.D.Cal.1971). Moreover, this claim is not, as the district judge recognized, foreclosed by Sostre. In his view, however, it was a matter of local concern only, resulting from the specialized situation growing out of the Attica revolt. Resolution of the merits by a single judge was therefore appropriate as plaintiffs did not meaningfully seek to enjoin the operation of a statute statewide. Concededly, because a court of three judges is only necessary to protect against "improvident state-wide doom by a federal court of a state's legislative policy," Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), the Supreme Court has permitted single-judge adjudication where local ordinances are sought to be enjoined, see, e. g., Ex Parte Collins, 277 U.S. 565, 568, 48 S.Ct. 585, 72 L.Ed. 990 (1928); or where action taken pursuant to a state statute in fact affects only a particular region or district within a state, e. g., Moody v. Flowers, 387 U.S. 97, 102, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). See generally Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 29-37 (1964). More recently, the Court has indicated that a complaint seeking to enjoin regulations promulgated by a statewide authority with jurisdiction over specialized institutions throughout a state will not require a three-judge court if the regulation in fact applies merely to a relatively small proportion of those institutions. Board of Regents v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972).
 
 
 12
 These limitations have no application here, however. So far as we can determine, the governing regulations before us are authorized by statute,[10] were promulgated by state-wide authority and apply in all state prisons. See Sostre v. McGinnis, supra, 442 F.2d at 199 n. 42. To be sure, these regulations, insofar as they allegedly jeopardize rights only of inmates confronted by probable future criminal prosecution, will not affect every prisoner. In the same sense, however, few state statutes or regulations affect all or most citizens of a state, yet a three-judge court may well be necessary. E. g., Goosby v. Osser, supra (pre-trial detainees allege election law unconstitutionally denies them right to vote). We do not suppose that prisoner conduct that may also violate the New York Penal Code is an isolated phenomenon, peculiarly confined to Attica.[11] Our conclusion is further fortified by the recently promulgated state regulation, which squarely contemplates the problem of self-incrimination in prison disciplinary proceedings throughout the state in light of possible subsequent criminal prosecution.[12] We hold that this challenge to the regulations sufficiently implicates well-considered state policy of state-wide application to require three-judge court adjudication of the claim for injunctive relief. Cf. Lewis v. Rockefeller, supra, 431 F.2d at 370 & n. 1 (regulation governing role of counsel at Parole Board prisoner-release hearings held sufficiently state-wide to require three-judge court).[13]
 
 
 13
 A few further observations seem appropriate. We recognize that the three-judge court statutes are technical enactments, to be restrictively construed. Phillips v. United States, supra, 312 U.S. at 251, 61 S.Ct. 480. In this spirit, we have previously declined to reverse decisions of single district judges, even where sections 2281 or 2282 might literally apply, when we unhesitatingly agreed with the resolution of the merits of a case by the court below, and where convening a statutory district court seemed therefore a patently wasteful formality.[14] We also agree with those who note the anomaly of requiring three judges to decide a case in which, as here, the state, for whose protection statutory courts were originally devised, is content to litigate the case before a single federal judge. See, e. g., Currie, supra, at 77. Nevertheless, though adherence to the letter of section 2281 (and judicial gloss thereon) may appear unduly formalized, and though it regrettably adds to the growing Supreme Court caseload, it may also forestall further delay that results from ultimately meaningless efforts, following disposition by a court of appeals, to obtain Supreme Court review: The Court apparently will consider, on its own motion, whether three judges were initially required, see Kennedy v. Mendoza-Martinez, 372 U.S. 144, 153, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Currie, supra, at 76, and, if so, the entire litigation must commence anew before a court of three judges. See, e. g., Goosby v. Osser, supra; Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L.Ed.2d 695 (1963) (per curiam). Thus, in appropriate cases, we have not hesitated to reverse a single judge disposition with instructions to convene a three-judge court. E. g., Gold v. Lomenzo, supra note 6; Kramer v. Union Free School District, 379 F.2d 491 (2d Cir. 1967). But for the development discussed below, that course is the one we would follow here.
 
 III
 
 14
 Our decision to remand is somewhat complicated, but eventually reinforced, by what has occurred in this case on appeal. Following submission of briefs in which plaintiffs urged and defendants opposed the necessity for a three-judge court, and following oral argument at which the three-judge court issue was vigorously pursued by the panel, with the parties adhering to their positions, plaintiffs moved in this court for permission to withdraw their prayer for injunctive relief. Obviously, if such a motion had been made and granted in the district court, the troublesome questions regarding jurisdiction of the single judge would not be before us. Compare Rosario v. Rockefeller, 458 F.2d 649, 651-652 n. 2 (2d Cir. 1972), aff'd, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); Carter v. McGinnis, supra note 4, 351 F.Supp. at 789 n. 2.[15] But we do not believe that resolution of the issue of district court jurisdiction can be so easily manipulated after submission of an appeal.[16] Even more significantly, if plaintiffs' application were granted by us, then the limited injunction that Judge Henderson has already entered and from which defendants cross-appeal, would also fall away. This would suggest a remand to the district court as the sensible course, in any event, to consider the changed situation anew, since plaintiffs do not suggest that they are uninterested in preserving the substance of what they already have. Accordingly, we deny plaintiffs' motion, without prejudice to renewal before Judge Henderson following remand. If renewed and granted at that time, plaintiffs should seek entry of a fresh decree declaratory in form only, from which a timely appeal to this court can again be taken.[17] Should plaintiffs elect to stand on their prayer for injunctive relief, a three-judge court is required for adjudication of the claims.
 
 
 15
 Case remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 ALI, Study of the Division of Jurisdiction Between State and Federal Courts 332 (1969)
 
 
 [2]
 See, e. g., H. Friendly, Federal Jurisdiction: A General View 50 (1973); Report of the Study Group on the Caseload of the Supreme Court 28-30 (1972); 1970 Reports of the Proceedings of the Judicial Conference of the United States 78-79 (1970)
 
 
 [3]
 Procedures for Implementing Standards of Inmate Behavior and for Granting Good Behavior Time Allowances, 7 N.Y.C. R.R. Ch. V, Pts. 250-53
 
 
 [4]
 The judge also granted plaintiffs' motion that the action be maintained as a class action, but denied plaintiffs' motion to consolidate the action with Carter v. McGinnis, 320 F.Supp. 1092 (W.D.N.Y. 1970), and 351 F.Supp. 787 (W.D.N.Y. 1972), notice of appeal filed by defendants, Dec. 29, 1972
 
 
 [5]
 But see Part III infra
 
 
 [6]
 We nevertheless have jurisdiction over this appeal, or "something sufficiently similar," Gold v. Lomenzo, 425 F.2d 959, 961 (2d Cir. 1970)
 
 
 [7]
 The reference at 442 F.2d 195 n. 29 seems noncommittal
 
 
 [8]
 In his concurring opinion in Sostre, Judge Waterman expressed his understanding that "decision as to what are wholly acceptable minimum standards [of due process] is left for another day through case-by-case development." 442 F.2d at 206 n. 2
 
 
 [9]
 As to the need for three-judge court adjudication of a challenge to regulations "as applied" in circumstances like these, see C. Wright, Law of Federal Courts 190 (1970)
 
 
 [10]
 N.Y. Correction Law Sec. 112 (McKinney's Consol.Laws, c. 43, 1968); id. Sec. 137 (1972-73 Supp.)
 
 
 [11]
 Compare the decisions cited in note 4 supra, growing out of an inmate uprising in Auburn Correctional Facility in November 1970
 
 
 [12]
 7 N.Y.C.R.R. Sec. 253.4, made part of the record on appeal by order dated February 9, 1973. We hasten to add that this regulation was not before the district court at the time of its decision
 
 
 [13]
 We note in passing that plaintiffs' complaint does allege threat of irreparable injury and lack of adequate legal remedy, satisfying the second Idlewild requirement, that the basis for injunctive relief must formally appear
 
 
 [14]
 E. g., Sardino v. Federal Reserve Bank, 361 F.2d 106, 114 & n. 10 (2d Cir.), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966) (two members of a reviewing appellate court panel and the single judge whose decision is before it-all of whom agreed that the claim was meritless-could be constituted as the three-judge court); see Astro Cinema Corp. v. Mackell, 422 F.2d 293 (2d Cir. 1970); Green v. Board of Elections, 380 F.2d 445, 449 (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968)
 
 
 [15]
 Had plaintiffs initially requested declaratory relief only, no three-judge court would have been required. Cf. Kennedy v. Mendoza-Martinez, supra, 372 U.S. at 155, 83 S.Ct. 554
 
 
 [16]
 Cf. Thoms v. Heffernan, 473 F.2d 478, 487-88 (2d Cir. 1973) (Timbers, J., dissenting) (protesting manipulation of appellate jurisdiction by style of relief framed by three-judge court). Plaintiffs' moving papers admit that "[a]t the oral argument . . . it became clear that continuing appellants' request for injunctive relief might well result in a remand . . . ." But compare Merced Rosa v. Herrero, 423 F.2d 591 (1st Cir. 1970)
 
 
 [17]
 We see no reason why such an appeal if taken could not be expedited, should the request be made