**POPULATION SERVICES INTERNATIONAL et al., Plaintiffs,**

**v.**

**Malcolm WILSON, Individually and as Governor of the State of New York, et al., Defendants.**

**No. 74 Civ. 1572.**

United States District Court,
S. D. New York.

Oct. 23, 1974.

Karpatkin, Ohrenstein & Pollet by Marvin M. Karpatkin and Michael N. Pollet, New York City, for plaintiffs.

Rena K. Uviller and Judith Mears, New York City, for American Civil Liberties Union Foundation, amicus curiae.

Louis J. Lefkowitz, Atty. Gen. of the State of New York by Arlene R. Silverman, New York City, for defendants.

## OPINION AND ORDER

PIERCE, District Judge.

Plaintiffs in this action seek a judgment declaring Section 6811(8) of the McKinney's Consol.Laws, c. 16, Education Law of the State of New York to be unconstitutional as violative of the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, to the extent that the section is applied to non-prescription contraceptives. They also seek preliminary and permanent injunctions against enforcement of the section to that extent. Jurisdiction is grounded on 28 U.S.C. §§ 1331, 1343(3) and (4), 2201, 2202, 2281 and 2284, and 42 U.S.C. § 1983.

Plaintiffs have moved this Court for an order empanelling a three-judge district court to hear the case. Defendants oppose the motion and, in addition, have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (FRCP). For the reasons detailed below, the plaintiffs' motion is granted and the defendants' motion is denied.

The complaint contains a single count. Seven plaintiffs are named. Plaintiff, Population Services International (hereinafter PSI), is alleged to be a North Carolina non-profit corporation whose primary objectives are to discover and implement new methods of conveying birth control information and services to persons not now receiving them with the ultimate goals of reducing unwanted pregnancy, fertility and population growth. Its activities include test marketing, product development, advertisement and display of contraceptives. Its activities occur in the United States, including the State of New York. Part of its funds for educational, scientific and research activities is allegedly received from federal grants and contracts.

Plaintiff, Dr. Anna T. Rand, is a physician licensed to practice medicine in New York State. She is alleged to be the Director of Family Planning at Albert Einstein College of Medicine and at Bronx Municipal Hospital, both in New York City. Her family planning programs include the distribution of contraceptives. Her patients in such programs include sexually active persons who are under the age of sixteen.

Plaintiff, Dr. Edward Elkin, is a physician licensed to practice medicine in New York State. It is alleged that he practices medicine as a pediatrician and physician for adolescents at the Adolescent Clinic at Mount Sinai Hospital in New York City, where he treats sexually active adolescents under and over the age of sixteen.

Plaintiff, Dr. Charles Arnold, is a physician licensed to practice medicine in New York State. It is alleged that his primary professional interests include family planning and the establishment of programs for the distribution of contraceptive devices to sexually active adolescents over and under the age of sixteen.

Plaintiff, Reverend James B. Hagen, is an ordained minister of the Protestant Episcopal Church. He is alleged to be the Coordinator of the Sunset Action Group against V.D., the sponsor of a program in which male contraceptive devices are sold and distributed, both at the church and at a local retail outlet which is not a licensed pharmacy, to residents of Brooklyn, New York, who are over and under the age of sixteen.

Plaintiff, John Doe, alleges that he is forty-three years of age, is married, has four children and engages actively in sexual conduct.

Plaintiff, Population Planning Associates (hereinafter PPA), is a North Carolina corporation which maintains an office in the County, City and State of New York. It is alleged to be primarily engaged in the retail sale of nonmedical contraceptives through the United States mails. PPA advertises its products in national periodicals entering New York State and occasionally places such advertisements in local periodicals in New York State.

The challenged statute reads:

"Sec. 6811. Misdemeanors

It shall be a class A misdemeanor for:

. . . . . .

8. Any person to sell or distribute any instrument or article, or any recipe, drug or medicine for the prevention of conception to a minor under the age of sixteen years; the sale or distribution of such to a person other than a minor under the age of sixteen years is authorized only by a licensed pharmacist but the advertisement or display of said articles, within or without the premises of such pharmacy, is hereby prohibited;".

Plaintiffs urge that by virtue of the restrictions and prohibitions of the challenged statute, irreparable harm and incalculable damage result to each of them, to the public and to persons under the age of sixteen. PSI and PPA contend that their objectives, *supra*, are being thwarted and chilled as a result of the statute. Drs. Rand, Elkin and Arnold, contend that their work with patients under and over age sixteen is directly affected by the subject law which prohibits the distribution by them of non-prescription contraceptives to adults as well as to minors. Reverend Hagen claims his work is similarly restricted. John Doe states that he is directly affected in his own sexual activities since he is unable to purchase contraceptives at retail outlets other than those operated by licensed pharmacists, of which the nearest is two miles from his family residence. Further, he states that he and his wife have four children, two of whom are under the age of sixteen, and that his right of privacy and liberty in matters related to educating his children about contraceptives is restricted. And he asserts that his right of privacy and liberty with respect to family planning, marriage and sex is violated and unduly burdened.

PPA has received three written communications from the State Board of Pharmacy. The first, dated December 1, 1971, informed PPA that an advertisement it had placed in a publication issued at a New York State college which solicited the sale of male contraceptives was a violation of the statute in question and sought PPA's "future compliance with [the] law." The second, dated February 23, 1973, asserted that PPA was not complying "with our law" by virtue of its "solicitation of . . . sales of contraceptives for men via magazine ads through the mails . . . ." It sought PPA's compliance with the subject law and stated, "In the event you fail to comply the matter will be referred to our Attorney General for legal action." The third, dated September 4, 1974, is a report of violation of the subject law made by State Board of Pharmacy inspectors, following a visit to PPA's New York office.

■ The motion before the Court seeks the convening of a three-judge court to consider this action and to hear the plaintiffs' motion for injunctive relief against enforcement of § 6811(8). The single district judge to whom such a request is made must consider whether a basis exists to convene a three-judge panel. The test to be applied is "whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962); Nieves v. Oswald, 477 F.2d 1109, 1111 (2d Cir. 1973).

The complaint seeks a declaration that § 6811(8) of the New York State Education Law is unconstitutional, insofar as it is applicable to non-prescription contraceptives, and an injunction against its enforcement to that extent. Clearly this claim meets the requirements of 28 U.S.C. §§ 2281 and 2284. The complaint also at least formally alleges a basis for equitable relief. As the Supreme Court recently stated:

"[A] refusal on the part of the federal courts to intervene when no state

proceeding is pending may place the [federal] plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." Steffel v. Thompson, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974).

Plaintiffs here are in just such a situation.

The sole remaining question, therefore, is whether the constitutional claims set forth in the complaint are so constitutionally insubstantial as to require dismissal of the complaint. Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L. Ed.2d 36 (1973) instructs that:

> " 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' . . . 'wholly insubstantial,' . . . 'obviously frivolous,' . . . and 'obviously without merit,' . . . The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281." *Id.* at 518, 93 S.Ct. at 859.

This definition describes the powers of a single judge to dismiss a complaint where an injunction is sought on the basis of unconstitutionality "in the most limiting terms the Court has ever used." Roe v. Ingraham, 480 F.2d 102, 106 (2d Cir. 1973). It is under this standard that the plaintiffs' challenges to the three provisions of the statute—the prohibition against sale or distribution to any person under the age of sixteen, the prohibition against sale or distribution to any person by someone other than a licensed pharmacist, and the absolute prohibition against advertisement and display—must be measured.

Plaintiffs base their challenge to the statute principally on the right to privacy. The existence of a constitutional right to privacy, shielding certain areas of human activity from governmental intrusion, was first recognized in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). There, in a case involving a married couple, the Court struck down a Connecticut statute prohibiting the use of contraceptives. In subsequent decisions, the Court has recognized further dimensions to this right. See Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (right of single persons to have access to contraceptives on the same basis as married persons); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ("fundamental" constitutional right of a woman to terminate her pregnancy, subject to regulation only by a "compelling" state interest); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 755, 35 L. Ed.2d 147 (1973) (right of a pregnant woman to make an abortion decision based on consultation with her doctor alone). Thus, constitutional protection has been extended to the most intimate phases of personal life, having to do with sexual intercourse and its possible consequences. See Rosenberg v. Martin, 478 F.2d 520, 524 (2d Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 102, 38 L. Ed.2d 90 (1973).

"If there is anything 'obvious' about the constitutional right to privacy at the present time, it is that its limits remain to be worked out in future cases." Roe v. Ingraham, *supra* 480 F.2d at 108. See Note, On Privacy: Constitutional Protection for Personal Liberty, 48 N. Y.U.L.Rev. 670 *passim* (1973). Neither *Griswold* nor *Eisenstadt* explicitly extended constitutional protection to the interest plaintiffs seek to have recognized here, i. e., an unlimited right to distribute and have access to contraceptives. There can be no doubt, however, that for the purposes of this motion,

there is a substantial question as to whether such a constitutional right exists.

■■■ The existence of a privacy right in this case, however, would not necessarily require invalidation of state regulation of the protected activity. See Roe v. Wade, *supra* 410 U.S. at 155–156, 93 S.Ct. 705. Therefore, the fact that each of the three challenged provisions limits access to and the distribution of contraceptives in some way does not automatically make them constitutionally suspect. However, if the exercise of a "fundamental" right is involved, it may be regulated only to the extent that regulation is justified by a "compelling" state interest. See *id.*, at 153–154, 93 S.Ct. 705. And, where governmental regulation of a constitutionally protected area is permissible, the regulation must be sufficiently narrow in scope so as to express only legitimate state interests. See Griswold v. Connecticut, *supra* 381 U.S. at 485, 85 S.Ct. 1678; NAACP v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964). As detailed below, questions exist, which are clearly sufficient to meet the test of Goosby v. Osser, *supra*, as to whether any one of the aspects of the statute challenged here meets these criteria.

## PROHIBITION OF SALE OR DISTRIBUTION BY ANYONE OTHER THAN A LICENSED PHARMACIST

In its papers, the State of New York advances two arguments in support of the regulation prohibiting sale or distribution to any person by anyone other than a licensed pharmacist. The first, not pressed at oral argument, is that this is a rational health measure facilitating quality control and allowing for professional advice to be given concerning the various items available.

It is difficult to see what control can be exercised by pharmacists or any other retailers over the quality of what are generally pre-packaged items. Nor is it apparent why professional advice is more necessary with respect to these products than with respect to the many other non-prescription devices and patent medicines which are widely distributed by both pharmacists and non-pharmacists. Even if a reason were shown for having such advice available, it is not at all clear to the Court what unique qualifications licensed pharmacists possess which prepare them to give professional advice as to the use of contraceptives.

The second justification proffered is that the limitation makes it easier for the State to enforce the prohibition against distribution to persons under the age of sixteen. Assuming that prohibition would itself be a legitimate state end, there appears to be no reason why it could not as easily be effected through grocers and other groups of retailers, thus making the products more readily available to persons who are entitled to purchase them if they choose to do so.

Having considered the justifications presented by the State, the Court finds that a not insubstantial question is presented as to whether prohibiting the sale of non-prescription contraceptives by anyone other than a licensed pharmacist unconstitutionally burdens the exercise of a protected right.

## PROHIBITION OF SALE OR DISTRIBUTION TO MINORS UNDER SIXTEEN

In support of the statute's absolute prohibition of the sale of non-prescription contraceptives to persons under sixteen, New York suggests that its goal is to limit teenage extramarital sexual activity. The State then argues that although there is no evidence that such activity increases in proportion to the availability of contraceptives, unless such a link is explicitly disproved, it is not irrational for the legislature to restrict access to contraceptives in the hope of limiting that activity.

■■■ As a starting point, it is clear that the mere fact that a person is a minor does not except him from the protections of the Constitution. See In re

Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527 (1967). "The fact that [persons] are juveniles does not in any way invalidate their right to assert their Constitutional right to privacy." Merriken v. Cressman, 364 F.Supp. 913 (E.D. Pa.1973). Therefore, an immediate question with respect to this provision is whether the State's asserted interest in limiting teenage extramarital activity is of sufficient magnitude to justify the burden placed on these individuals' right to privacy.

The State argues that even where there is an invasion of protected freedoms, the power of the State to control the conduct of children reaches beyond the scope of its authority over adults, citing Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) and Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). Those cases dealt, respectively, with limiting the access of persons under seventeen to sexual materials which might be harmful to them even though not obscene for adults, and with barring children from certain types of employment on the streets and in public places. In contrast to the situations there, cogent arguments are advanced here that the prohibited articles might serve as a positive good for the minors affected, in that access to them might diminish the incidence of venereal disease and unwanted pregnancy for persons in the affected age group.

The State disputes these contentions, but this is not the appropriate place to attempt to resolve the dispute. Suffice it to say that a not insubstantial question has been raised as to whether this provision unconstitutionally infringes the right to privacy of New York State residents under the age of sixteen.

Even if it were to be assumed for present purposes that limiting or restricting teenage extramarital sexual activity is a legitimate State objective and that the prohibition at issue is a rational way to pursue that end, there would remain a question as to whether the State has drawn its categories here in conformity with the requirements of the Constitution.

Under the Equal Protection Clause of the Fourteenth Amendment, a classification, to be reasonable and not arbitrary, "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, *so that all persons similarly circumstanced shall be treated alike.*" Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S. Ct. 560, 562, 64 L.Ed.2d 989 (1920) (emphasis added). See Eisenstadt v. Baird, *supra* 405 U.S. at 446–47, 92 S.Ct. 1029, 31 L.Ed.2d 349; Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). There may be a substantial question in this case as to whether the State has drawn its lines in a fashion commensurate with this standard. However, since the Court has already found a sufficient question under the privacy standard to require submitting this provision to a three-judge panel, it is not necessary to explore the Equal Protection question further here.

## PROHIBITION OF ADVERTISEMENT OR DISPLAY

■ The third and final provision challenged, insofar as it applies to nonprescription devices, is the absolute ban on the display and advertising of contraceptives. It is clear that where information relating to the exercise of a constitutional right is involved, the fact that the information is in the form of an advertisement or may be tied to commercial activity does not deprive it of the First Amendment protection accorded communications and expressions of ideas. See Pittsburgh Press Co. v. Human Rel. Comm'n, 413 U.S. 376, 384, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); Ginzburg v. United States, 383 U.S. 463, 474, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); New York Times Co. v. Sullivan, 376 U. S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In the face of this authority, there is certainly a question sufficient to meet the Goosby v. Osser, *supra* standard as to whether New York's *complete* ban on advertising and display vio-

**550**

lates the First Amendment. Such a complete ban may also impermissibly inhibit any existing privacy right to distribute and have access to contraceptives.

## CONCLUSION

The Court has found a sufficient question as to the constitutionality of each of the three challenged provisions of § 6811(8), as applied to non-prescription contraceptives, to require submission of the issues to a three-judge district court. Accordingly, the Court declines to dismiss any part of the complaint and the defendants' motion for judgment on the pleadings pursuant to Rule 12(c) FRCP is denied. The plaintiffs' motion requesting the convening of a three-judge court is hereby granted. The request will be forwarded to the chief judge of this circuit upon filing of this opinion and order.

So ordered.