**BROOK HOLLOW ASSOCIATES**

v.

**J. E. GREENE, INC., et al.**

**BROOK HOLLOW ASSOCIATES**

v.

**Warren ANDRULOT d/b/a Andrulot Associates et al.**

**Civ. Nos. H–74–331, H–74–332.**

United States District Court,
D. Connecticut.

Feb. 10, 1975.

Elliott B. Pollack, Hartford, Conn. for Brook Hollow Associates.

Adam Mantzaris, and Brian J. Farrell, Town Attys., Wallingford, Conn., for Town of Wallingford.

Bruce Mayor, Hartford, Conn., for J. E. Greene, Inc. and others.

James H. Throwe, East Hartford, Conn., for Warren Andrulot and others.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

The plaintiff in these suits is the owner, developer, and general contractor of the Brook Hollow Health Care Facility in the town of Wallingford, Connecticut. The defendants Andrulot and J. E. Greene, Inc., both claim to have supplied materials and services for work on the Health Facility to the plaintiff for which they were not paid. Therefore, both these defendants issued certificates of mechanic's liens that were subsequently recorded on the town's land records by the assistant town clerk of Wallingford, defendant Grayce M. Rose, all pursuant to Conn.Gen.Stat. §§ 49–33 to 49–36.[1] These statutes do not pro-

---

1. These sections provide, in relevant part:
"§ 49–33. Mechanic's lien. Precedence. Rights of subcontractors

If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances, and such claim is by virtue of an agreement with or by consent of the owner of the land upon which such building is being erected or has been erected or has been moved, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building, with the land on which it stands, shall be subject to the payment of such claim. Such claim shall be a lien on such land, building and appurtenances and shall take precedence over any other encumbrance originating after the commencement of such services, or the furnishing of any such materials, subject to apportionment as provided in section 49–36. . . . Any mechanic's lien may be foreclosed in the same manner as a mortgage.
"§ 49–34. Certificate of lien to be recorded

No such lien shall be valid, unless the person performing such services or furnishing such materials, within sixty days after he has ceased to do so, lodges with the town clerk of the town in which such building is situated a certificate in writing, describing the premises, the amount claimed as a lien thereon and the date of the commencement of the performance of services or furnishing of materials, stating that the amount claimed is justly due, as nearly as the same can be ascertained, and subscribed and sworn to by the claimant; which certificate shall be recorded by the town clerk with deeds of land. . . .
"§ 49–35. Notice of intent. Liens of subcontractors and materialmen

No person other than the original contractor for the construction, raising, removal or repairing of the building, or a subcontractor whose contract with such original contractor is in writing and has been assented to in writing by the other party to such original contract, shall be entitled to claim any such lien, unless, after commencing, and not later than sixty days after ceasing, to furnish materials or render services for such construction, raising, removal or repairing, he gives written notice to the owner of such building that he has furnished or commenced to fur-

vide for any judicial approval, review, or hearing prior to the issuance or recordation of the lien. As a practical matter, such a recorded lien clouds title to the land and hinders alienation of any interest in it; to mitigate this impact, the

law provides that a bond may be substituted and the lien dissolved by order of a state court. Thereafter the lienor has two years in which to sue upon the bond.[2] In at least some cases the owner may test the validity of the lien in court

nish materials, or rendered or commenced to render services, and intends to claim a lien therefor on such building; which notice shall be served upon such owner, if he resides in the same town in which such building is being erected, raised, removed or repaired, by any indifferent person, by leaving with him or at his usual place of abode a true and attested copy thereof. If such owner does not reside in such town, but has a known agent therein, such notice may be so served upon such agent, otherwise it may be served by any indifferent person, by mailing a true and attested copy of such notice to such owner at the place where he resides. When there are two or more owners, such notice to one of them shall be notice to all. Such notice, with the return of the person who served it endorsed thereon, shall be returned to the original maker thereof within said period of sixty days. No subcontractor, without a written contract complying with the provisions of this section, and no person who furnishes material or renders services by virtue of a contract with the original contractor or with any subcontractor, shall be required to obtain an agreement with, or the consent of, the owner of the land, as provided in section 49–33, to enable him to claim a lien under this section.

"§ 49–36. Liens limited; apportionment; payments to original contractor

No such lien shall attach to any building or its appurtenances, or to the land on which the same stands, in favor of any person, to a greater amount in the whole than the price which the owner agreed to pay for such building and its appurtenances. When there are several claimants and the amount of their united claims exceeds such price, the claimants, other than the original contractor, shall be first paid in full, if the amount of such price is sufficient for that purpose; but, if not, it shall be apportioned among the claimants having such liens, other than the original contractor, in proportion to the amount of the debts due them respectively; and the court having jurisdiction thereof, on application of any person interested, may direct the manner in which such claims shall be paid; but, in determining the amount to which any lien or liens shall attach upon any land or building, the owner of such land or building shall be allowed whatever payments he has made, in good faith, to the original contractor or contractors, before receiving notice of such lien or liens. No

payments made in advance of the time stipulated in the original contract shall be considered as made in good faith, unless notice of intention to make such payment has been given in writing to each person known to have furnished materials or rendered services at least five days before such payment is made."

2. Conn.Gen.Stat. §§ 49–37, 49–39, 49–40a:
"§ 49–37. Dissolution of mechanic's lien by substitution of bond. Joinder of actions on claim and bond

Whenever any mechanic's lien has been placed upon any real estate pursuant to sections 49–33, 49–34 and 49–35, the owner of such real estate, or any person interested therein, may make an application to any judge of the superior court or of the court of common pleas that such lien be dissolved upon the substitution of a bond with surety, and such judge shall order reasonable notice to be given to the lienor of such application. If such lienor is not a resident of the state, such judge may order notice to be given by publication, registered or certified letter or personal service. If such judge is satisfied that the applicant in good faith intends to contest such lien, he shall, if the applicant offers a bond, with sufficient surety, conditioned to pay to the lienor or his assigns such amount as a court of competent jurisdiction may adjudge to have been secured by such lien, with interest and costs, order such lien to be dissolved and such bond substituted therefor and shall return such application, notice, order and bond to the clerk of the superior court for the county wherein such lien is recorded; and, if the applicant, within ten days from such return, causes a copy of such order, certified by such clerk, to be recorded in the town clerk's office where such lien is recorded, such lien shall be dissolved. Whenever a bond is substituted for any lien after an action for the foreclosure of a lien has been commenced, the plaintiff in such foreclosure may amend his complaint, without costs, so as to make the action one upon such bond with which the plaintiff may join an action to recover upon his claim. Whenever a bond is substituted for any lien before an action for the foreclosure of the lien has been commenced, the plaintiff may join the action upon the bond with an action to recover upon his claim. Whenever a bond has been substituted for any lien, pursuant to

prior to suit by the lienor. *See* Fourth New London NSB Quarters, Inc. v. Wyoming Valley Contractors, Inc., 22 Conn.Supp. 293, 170 A.2d 737 (1961). *But cf.* Ravitch v. Stollman Poultry Farms, Inc., 162 Conn. 26, 35, 291 A.2d 213 (1971); Sachs v. Nussenbaum, 92 Conn. 682, 687, 104 A. 393 (1918). In the present cases the plaintiff, in order to obtain a mortgage on its property, alleges that it was compelled to post such a bond even though no facts existed sufficient to establish probable cause for the defendants to maintain mechanic's liens on its property.

██ The plaintiff contends that this statutory pattern violates the due process clause of the fourteenth amendment because it deprives the plaintiff of property without sufficient procedural safeguards. *Cf.* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Fin. Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Brook Hollow therefore seeks a declaratory judgment of the invalidity of Conn.Gen.Stat. §§ 49–33 to 49–37, an injunction against their continued enforcement, and damages for the violations of its constitutional rights. Because an injunction against the enforcement of a statute of statewide applicability is sought, Brook Hollow asks the convening of a three-judge court to hear the cases. *See* 28 U.S.C. § 2281 (1970). Jurisdiction is asserted under 28 U.S.C. § 1343(3) (1970).[3]

**I.**

██ These cases, as the parties point out, present an issue similar to issues that have been litigated with various results in other jurisdictions. *Compare* Bay State Harness Racing & Breeding Ass'n v. PPG Industries, 365 F.Supp. 1299 (D.Mass.1973) (3-judge court); Gunter v. Merchants Warren Nat'l Bank, 360 F.Supp.1085 (D.Me. 1973) (3-judge court); Clement v. Four North State St. Corp., 360 F.Supp. 933 (D.N.H.1973) (3-judge court); *and* Idaho First Nat'l Bank v. Rogers, 41 U.S. L.W. 2492 (D.Idaho 1973) (state mechanic's lien and land attachment laws unconstitutional);[4] *with* Ruocco v. Brinker, 380 F.Supp. 432 (S.D.Fla.1974)

this section, unless an action is brought to recover upon such bond within two years from the date of recording the certificate of lien, such bond shall be void.

"§ 49–39. Limitation of mechanic's lien

No mechanic's lien shall continue in force for a longer period than four years after such lien has been perfected, unless the party claiming such lien commences an action to foreclose the same and files a notice of lis pendens in evidence thereof with the town clerk within two years from the date such lien was filed with such town clerk. Each such lien, after the expiration of such two-year period without action commenced and notice thereof filed as aforesaid, shall be discharged of record by the person claiming the same, upon the request of the owner of the property upon which the lien had been claimed or such owner's attorney. An action to foreclose a mechanic's lien shall be privileged in respect to assignment for trial.

"§ 49–40a. Mechanic's and judgment liens expired by limitation of time

Any mechanic's lien which has expired because of failure to comply with the time limitations of section 49–39 or any judgment lien which has expired for failure to comply with the time limitation of section 49–46 shall be automatically extinguished and the continued existence of such lien unreleased of record shall in no way affect the record owner's title nor the marketability of the same."

3. Jurisdiction is also claimed under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1970). It is clear, however, that this Act is not an independent source of federal jurisdiction. *See, e. g.,* Ryan v. United States, 360 F.Supp. 264 (E.D.N.Y.), aff'd mem., 478 F.2d 1397 (2d Cir. 1973), and cases cited therein.

4. A recent Connecticut superior court case, now on appeal to the Connecticut supreme court, held these mechanic's lien statutes invalid on federal and state constitutional grounds. *See* Roundhouse Constr. Corp. v. Telesco Masons Supply Co., No. 15–22–55 (Super.Ct. Fairfield County, June 20, 1974). *Roundhouse*'s interpretation of federal law is not binding on a federal court, of course; this court owes obedience on matters of federal law only to the Second Circuit and the Supreme Court. *See* 1B J. Moore, Federal Practice ¶ 0.402[1], at 65 (2d ed. 1965); *cf.* Taylor v. Baltimore & O.R.R., 344 F.2d 281, 285 (2d Cir. 1965). Nor does the fact

(3-judge court); Central Security Nat'l Bank v. Royal Homes, Inc., 371 F.Supp. 476 (E.D.Mich.1974); Cook v. Carlson, 364 F.Supp. 24 (D.S.D.1973); Ross v. Brown Title Corp., 356 F.Supp. 595 (E. D.La.1973) (3-judge court), aff'd mem., 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394 (1974); Spielman-Fond, Inc. v. Hansons, Inc., 379 F.Supp. 997 (D.Ariz. 1973) (3-judge court), aff'd mem., 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974); and Black Watch Farms, Inc. v. Dick, 323 F.Supp. 100 (D.Conn.1971) [5] (holding constitutional state mechanic's lien and land attachment statutes).

Two of these cases, both upholding state statutes, deserve special attention because they were affirmed by the Supreme Court. One of them, Ross v. Brown Title Corp., is distinguishable from the instant cases. The Louisiana statutes there challenged require that a creditor first get ex parte judicial approval for its real estate attachment. The Connecticut statutes lack this protection and deal with mechanic's lien instead of land attachment laws. The other case affirmed by the Supreme Court, Spielman-Fond, is directly on point, however. The three-judge court, in upholding the Arizona mechanic's lien laws (which provide about the same protection to a commercial owner as do Connecticut's),[6] emphasized the insubstantial nature of the interference with a property interest posed by the laws:

> "It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding or title insurance."

379 F.Supp. at 999; accord, Ruocco v. Brinker, 380 F.Supp. 432 (S.D.Fla.1974) (3-judge court). Brook Hollow tries to distinguish Spielman-Fond on the ground that in that case no mortgage

---

that the plaintiff might have an efficacious remedy in state court affect my obligation to honor its choice of a federal forum. See Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Where the state constitution is substantially equivalent to the federal constitution as to the point in issue (which is the case with respect to Connecticut's due process clause, see Cyphers v. Allyn, 142 Conn. 699, 703, 118 A.2d 318 (1955)), abstention by the federal courts is not required. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

5. Judge Zampano's ruling in Black Watch Farms held the Connecticut real estate attachment laws, Conn.Gen.Stat. § 52–279 et seq., constitutional. These laws provide a statutory pattern similar to that governing mechanic's lien laws; however, Judge Zampano's decision predated Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which expanded the holding of Sniadach v. Family Fin. Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), beyond its application to wage garnishment statutes, to which Judge Zampano found it limited. 323 F.Supp. at 102; see North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 60, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Whether the expansion of Sniadach encompasses these cases is perhaps somewhat questionable after Mitchell v. W.T. Grant Co., 416 U.S. 600, 614, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); see The Supreme Court, 1973 Term, 88 Harv.L.Rev. 13, 80–81 (1974). However, some of the broader implications of Mitchell have recently been renounced by the Court in North Ga. Finishing, Inc.

6. See Ariz.Rev.Stat.Ann. §§ 33–981, 33–993, 33–997 to 33–998, 33–1004 (1974). Arizona limits the right of foreclosure of the lien by a six-month statute of limitations; compare Conn.Gen.Stat. § 49–37 (two-year statute of limitations). Arizona requires a bond posted as a substitute for the lien to be equal to one and one-half times the claim secured by the lien; compare Conn.Gen.Stat. § 49–37 (amount of claim plus interest and costs). Arizona statutes provide no way for the owner to challenge the validity of the lien on his own initiative; this is sometimes possible under Connecticut case law, see pp. 1323–1325 supra.

(or other alienation) commitment had yet been obtained and was being interfered with, whereas here one had been obtained. As the language above indicates, however, such a distinction is untenable: the *Spielman-Fond* court decided that there would be no significant interference with an obtained commitment to alienate the property.[7]

## II.

■■■ A single judge has no jurisdiction to hear cases which seek injunctions against the enforcement of statutes ·of statewide applicability unless they are patently and egregiously invalid on their face. *See* Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). If the challenge to the statute's constitutionality is not clearly insubstantial, a three-judge court must be convened pursuant to 28 U.S.C. § 2281 (1970). If the challenge is clearly insubstantial, neither a three-judge court nor the single judge has jurisdiction of the case. *Cf.* Hagans v. Lavine, 415 U. S. 528, 534–543, 94 S.Ct. 1372, 39 L.Ed. 2d 577 (1974), and cases cited therein.

The question presented in these cases is whether a decision squarely on point against the plaintiff and summarily affirmed by the Supreme Court renders the plaintiff's cases so insubstantial that they must be dismissed for lack of jurisdiction. Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973), states the applicable rule:

"[C]laims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for purposes of 28 U.S.C. § 2281. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' Ex parte Poresky, [290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933)], quoting from Hannis Distilling Co. v. Baltimore, [216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910)] . . . ."

Nothing is more soundly foreclosed than a question squarely ruled upon by the Supreme Court. However, in these cases the plaintiff argues that the Supreme Court's decision in *Spielman-Fond* should be given less weight than normal because it was merely a summary affirmance on an appeal as-of-right from the decision of a three-judge court. *See, e.g.,* Currie, "The Three-Judge District Court in Constitutional Litigation," 32 U.Chi.L.Rev. 1, 74 n.365 (1964).[8] The Court itself has recently proclaimed that summary affirmances have precedential value, *see* Edelman v. Jordan, 415 U.S. 651, 671, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and the Second Circuit has held, after *Edelman,* that they are binding upon the lower courts of this circuit, *see* Mercado v. Rockefeller, 502 F.2d 666, 673 (2d Cir. 1974). But the Supreme

---

7. The lower court's reasoning may not have been the basis of the Supreme Court's summary affirmance, as Chief Justice Burger warned in his recent concurring opinion in Fusari v. Steinberg, 419 U.S. 379, 390, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (see note 8 *infra*). The Court may have reasoned instead that there was interference with a significant property interest but that on balance the state's procedures provided sufficient due process protection. *Cf.* Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Or the Court may have had some entirely different grounds for its decision.

8. *Cf.* Fusari v. Steinberg, 419 U.S. 379, 391, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring) (footnote omitted):

"When we summarily affirm without opinion the judgment of a three-judge District Court we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by the Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established. . . . "

**1328**

Court also said in *Edelman* that it would itself give less weight to such decisions than to more fully considered opinions in applying the rule of *stare decisis*, 415 U.S. at 671 & n.14, 94 S.Ct. 1347. Thus it might still be asked whether, in the words of *Goosby*, the question here is "foreclosed," with no room left "for the inference that the questions sought to be raised can be the subject of controversy", 409 U.S. at 518, 93 S.Ct. at 859.[9] In other words, is the fact that the Supreme Court would give less weight to its prior decision on this question because it was a summary affirmance enough to make the plaintiff's issue not insubstantial?

■ Even assuming *arguendo* that "foreclosed" does not simply mean "foreclosed to the lower courts," [10] the better answer is that there is no substantial question presented by these cases. This conclusion is fortified by consideration for the burdensome caseload of the Supreme Court. Under this rule the plaintiff will be able to appeal to the Second Circuit. *See* Nieves v. Oswald, 477 F.2d 1109 (2d Cir. 1973). If it agrees that no substantial question is presented, the plaintiff may apply for *certiorari* in the Supreme Court, and the Court will thus have an opportunity to reconsider its ruling in *Spielman-Fond* without being compelled to do so.[11] If, on the other hand, the plaintiff's question were found to be not insubstantial, a three-judge court would be convened that would consider the merits, and it would be compelled to honor the Supreme

Court's decision in *Spielman-Fond*. *See* Mercado v. Rockefeller, 502 F.2d 666 (2d Cir. 1974). From this adverse decision the plaintiff would have an appeal as-of-right to the Supreme Court, 28 U.S.C. § 1253 (1970), and the Court would be compelled to consider whether it would follow its decision in *Spielman-Fond*. In order to promote economic use of our limited judicial resources,[12] it is therefore better to dismiss the plaintiff's complaints at this point for failure to present a substantial question and, therefore, for lack of jurisdiction. It is

So ordered.

---

9. In fact it is not at all clear what today's Supreme Court would say about the constitutionality of Connecticut's mechanic's lien laws. Except for the effect on the debtor (for the lien laws leave him in possession of his property), the Connecticut laws are quite similar to the Georgia pre-judgment garnishment laws held unconstitutional in North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

10. *But cf.* Nieves v. Oswald, 477 F.2d 1109, 1112 (2d Cir. 1973) (holding that the decisions of the circuit court may also foreclose constitutional challenges). If a circuit court

can so foreclose an issue as to render it insubstantial then it does not matter what the Supreme Court might have done had it a chance to review the issue.

11. For a discussion of some complications of this process, see H. Hart & H. Wechsler, The Federal Courts and the Federal System 973–974 (2d ed. 1973).

12. Of course, this consideration depends on the reasonable but empirically unverified assumption that the Court must on average take more time to decide a case on the merits summarily than to decide to deny *certiorari*.